J.M. SMUCKER, L.L.C., APPELLANT, v. LEVIN, TAX COMMR., APPELLEE.

[Cite as *J.M. Smucker, L.L.C. v. Levin,* 113
Ohio St.3d 337, 2007-Ohio-2073.]

(No. 2006–0355—Submitted January 10, 2007—Decided May 16, 2007.)

MOYER, C.J.

{¶ 1} In this appeal, J.M. Smucker, L.L.C. ("Smucker LLC"), the manufacturing arm of J.M. Smucker Company ("Smucker Co."), sought abatement of late-filing penalties assessed by the Tax Commissioner for tax years 2002 and 2003. Pursuant to R.C. 5711.28, the Tax Commissioner denied Smucker LLC's application for abatement. The taxpayer appealed to the Board of Tax Appeals ("BTA"). We conclude that the BTA acted reasonably and lawfully when it determined that the Tax Commissioner did not abuse his discretion, and we therefore affirm.

I

{¶ 2} On October 9, 2001, Smucker Co. negotiated an agreement with Procter & Gamble ("P & G") whereby Smucker Co. would purchase assets owned and used by P & G in manufacturing Crisco oil and Jif peanut butter. In connection with the prospective acquisition, Smucker Co. organized Smucker LLC, effective May 1, 2002. Smucker Co. promptly transferred its own manufacturing assets to Smucker LLC. Smucker Co. then acquired the Crisco and Jif businesses from P & G in a tax-free asset purchase on June 1, 2002. Smucker Co. transferred the Crisco/Jif assets to Smucker LLC on December 1, 2002. After that transfer, Smucker LLC fulfilled its function as the primary manufacturing and distribution company of the Smucker group.

{¶ 3} At issue are the deadlines for filing personal-property-tax returns for tax years 2002 and 2003. For the 2002 tax year, Smucker LLC was a new entity newly doing business in Ohio. As a result, Smucker LLC was required by statute to file its first personal-property-tax return within 90 days of commencing business. R.C. 5711.04(B). In this case, Smucker LLC agrees that it should have filed its first property tax return for the 2002 tax year by July 30, 2002. Additionally, Smucker LLC's personal-property-tax return for tax year 2003 was due in the ordinary course between February 15 and April 30, 2003. R.C.

5711.04(A). Smucker LLC was granted until June 15, 2003, to file its 2003 tax return for business property.

{¶ 4} Neither the 2002 nor the 2003 return was filed on time. The 2003 return was mailed on September 17, 2003, and arrived at the Department of Taxation three months late, on September 18, 2003. The 2002 return was mailed on October 7, 2003, and arrived at the Department of Taxation more than one year and two months late, on October 9, 2003.

{¶ 5} The Tax Commissioner, acting pursuant to his authority under R.C. 5711.27, assessed late-filing penalties. The statute requires the imposition of such penalties, which consist of a percentage increase of the assessed value in each taxing district. The statute authorizes the Tax Commissioner to assess penalties of up to 50 percent of the listed value, but it authorizes abatement when the failure to timely file "is due to reasonable cause." The Tax Commissioner assessed a 15 percent penalty for the 2002 tax year and a 10 percent penalty for the 2003 tax year.

{¶ 6} Smucker LLC requested abatement of the penalties pursuant to R.C. 5711.28. Pointing to the June 1, 2002 acquisition of the Crisco/Jif assets by Smucker Co. and the December 1, 2002 transfer of the acquired assets to Smucker LLC, Smucker Co. alleged that it had been "unable to file the returns by the due date" because "[t]he determination of the fair value of the subject assets for accounting purposes took almost one year after the transaction to complete." These circumstances "required [Smucker Co.] to spend additional time to review and classify the property to assure the filing of complete and accurate returns." In spite of these contentions, the Tax Commissioner denied the petition for abatement, finding that "petitioner's request is not well taken in that the returns were filed after the due dates without reasonable cause; and that the request was made for multiple late filed return years."

{¶ 7} On its appeal to the BTA, Smucker LLC offered the testimony of its manager of property and tax accounting to support its contention that the delay in filing returns resulted primarily from what Smucker LLC viewed as its obligation to wait for an allocation of the purchase price to all the assets—property, plant, and equipment—pursuant to Financial Accounting Standard 141. That allocation was based on an actual appraisal of operating assets, and the appraisal report became available in April 2003. Smucker LLC also presented evidence to the BTA that Smucker Co.—the parent company—had filed its 2003 return late, but its request for abatement of the late-filing penalty had been granted.

{¶ 8} A tax agent supervisor representing the Tax Commissioner testified that an internal unwritten policy of the Department of Taxation required denial of abatement when there was more than one delinquent filing within a five-year

look-back period. In the present case, Smucker Co. filed late only for the 2003 tax year, but Smucker LLC's late filing involved two successive tax years of late filing, a fact that militated against abatement as to both years.

{¶ 9} The supervisor also testified concerning the company treasurer's declaration on the tax return that the return is true, accurate, and complete. She said that in 2003, the department accepted tax returns without that declaration. Other merging companies that do not yet have accurate valuations declare that their returns are based on "the best available information" and correct the returns later.

{¶ 10} Finally, the supervisor gave two examples of "reasonable cause" for a delay in filing that would justify an abatement of the late-filing penalty. The first was a fire destroying pertinent documents; the second was the accidental death of an accountant about to mail the return.

{¶ 11} The BTA affirmed the denial of the abatement. Noting that "there may be mitigating circumstances in this case," the BTA emphasized that Smucker LLC "admits that the accounting firm finished the inventory appraisal and made that information available to it in April 2003" and that Smucker LLC "also concedes that it would have had at least pro forma figures showing what Crisco, and its assets, were worth" both when Smucker Co. purchased the assets and when they were transferred to Smucker LLC. Applying the abuse-of-discretion standard, the BTA concluded that Smucker LLC had not presented "competent, probative, and reliable evidence to support its contention that the Tax Commissioner acted unreasonably, arbitrarily, or unconscionably in failing to abate the penalty assessed." One member of the BTA dissented, opining that the evidence showed that the delay in filing "was due to 'reasonable cause.' "

## II

{¶ 12} R.C. 5711.27 states, "No taxpayer shall fail to make a return within the time prescribed by law, or as extended [in accordance with another statute]* * *." When a taxpayer violates that mandate, R.C. 5711.27 requires that penalties be assessed. The penalties include adding "to the assessment of each class or item of taxable property the taxpayer failed to return, list, or disclose a penalty of up to fifty per cent of the assessment." R.C. 5711.28 sets forth the procedures for assessing and abating penalties and provides that the late-filing taxpayer may file a petition for abatement "[w]ithin sixty days after the mailing of the notice of a penalty assessment. * * * The commissioner shall review the petition without the need for hearing. If it appears that the failure of the taxpayer to timely return or list as required under this chapter * * * was due to reasonable cause and not willful neglect, the commissioner may abate in whole or in part the penalty assessment."

{¶ 13} Under R.C. 5711.27, the assessor "shall" impose a penalty for late filing. The preliminary issues in this case concern the scope of the Tax Commissioner's authority when he reviews a petition to abate that penalty and the standard of review when his denial of a penalty assessment is challenged by the taxpayer.

### A. R.C. 5711.28 confers discretionary power, the exercise of which should be reviewed under an abuse-of-discretion standard.

{¶ 14} The Tax Commissioner contends, and the appellant does not disagree, that the "may abate" language of R.C. 5711.28 creates a discretionary power of abatement in the Tax Commissioner. We agree. " 'May' is generally construed to render optional, permissive, or discretionary the provision in which it is embodied." *State ex rel. Niles v. Bernard* (1978), 53 Ohio St.2d 31, 34, 7 O.O.3d 119, 372 N.E.2d 339.

{¶ 15} In the area of tax abatement generally, we have acknowledged the Tax Commissioner's discretionary authority. See *Frankelite Co. v. Lindley* (1986), 28 Ohio St.3d 29, 31, 28 OBR 90, 502 N.E.2d 213; *Jennings & Churella Constr. Co. v. Lindley* (1984), 10 Ohio St.3d 67, 70, 10 OBR 357, 461 N.E.2d 897; *Interstate Motor Freight Sys. v. Bowers* (1960), 170 Ohio St. 483, 485, 11 O.O.2d 240, 166 N.E.2d 229.

{¶ 16} Because the Tax Commissioner has discretion to grant or deny an abatement of a late-filing penalty, the BTA and the court must apply an abuse-of-discretion standard when reviewing the denial of a request for abatement. Under that standard of review, it is Smucker LLC's burden to show "more than an error of law or judgment"; the appellant must show that in denying the abatement, the Tax Commissioner's "attitude is unreasonable, arbitrary or unconscionable." *Strongsville Bd. of Edn. v. Zaino* (2001), 92 Ohio St.3d 488, 490, 751 N.E.2d 996. See, also, *Buckley v. Wilkins*, 105 Ohio St.3d 350, 2005-Ohio-2166, 826 N.E.2d 811, ¶ 25.

### B. The five-year look-back does not constitute an abuse of the Tax Commissioner's discretion under R.C. 5711.28.

{¶ 17} R.C. 5711.28 differs from some other abatement statutes in that it couples the discretionary "may abate" language with other language—references to "reasonable cause" and "willful neglect." Those terms arguably set forth legal standards that the Tax Commissioner should apply. The appellant argues that by applying the five-year look-back, the Tax Commissioner violated R.C. 5711.28 in that the look-back replaced the "reasonable cause" standard prescribed by the statute. The taxpayer's contention is not supported by the record.

{¶ 18} First, the Tax Commissioner expressly found that "the returns were filed after the due dates without reasonable cause." The testimony of the supervisor supported the finding of a lack of reasonableness by showing that the

Tax Commissioner requires filing, even when corrections may be needed in the future. Indeed, the only examples of reasonable cause that the supervisor identified involved unexpected contingencies such as destruction of documents by fire or the sudden death of the tax preparer. Because this case involved a contingency fully within the power of the taxpayer to anticipate, the Tax Commissioner found no reasonable cause for delay.

{¶ 19} Second, even if reasonable cause to grant an abatement were found, the appellant's argument would fail. The existence of reasonable cause would merely trigger the Tax Commissioner's discretion to grant or deny an abatement. See R.C. 5711.28 ("If it appears that the failure of the taxpayer to * * * file a complying report and pay tax * * * was due to reasonable cause * * *, the Commissioner may abate * * * the penalty assessment"). The controlling question is whether the application of discretion has been abused. We conclude that using the five-year look-back constitutes a reasonable way for the Tax Commissioner to exercise his discretion.

{¶ 20} Finally, by its own admission, Smucker LLC possessed the appraisal it needed to finalize the valuation of inventory no later than April 2003. Yet Smucker delayed filing both the 2002 and the 2003 returns for another five months. Even if Smucker LLC were justified in waiting until June 15, 2003 (the extended deadline for the 2003 return) to file its 2002 return, the additional delay to September and October 2003 could be construed as "willful neglect" that superseded any "reasonable cause" under R.C. 5711.28.

### C. The grant of an abatement to Smucker Co. with respect to its 2003 return does not convert the denial of abatement to Smucker LLC into an abuse of discretion.

{¶ 21} Smucker LLC also argues that the Tax Commissioner's decision to grant an abatement to its parent, Smucker Co., for its 2003 tax-year return means that Smucker LLC should also receive an abatement. The 2003 tax-year returns of Smucker Co. and Smucker LLC were filed in September 2003, some three months after the June 15, 2003 due date. Smucker LLC alleges that because the basis for finding "reasonable cause" would be the same in both cases, the parent and the subsidiary should have been treated the same, with both receiving a grant of abatement.

{¶ 22} We acknowledge that Smucker Co. would expect to meet some of the same obstacles that Smucker LLC faced in preparing its 2003 tax-year return. Specifically, Smucker Co.'s ownership of the Crisco/Jif inventory from June 1, 2002, to December 1, 2002, would require Smucker Co. to include the inventory in its monthly averages to arrive at a 2003 taxable value of inventory. That is so because in valuing inventory in the current tax year, the "inventory valuation statutes may draw on the antecedent fact of holding inventory" during the prior

year. *Harsco Corp. v. Tracy* (1999), 86 Ohio St.3d 189, 192, 712 N.E.2d 1249 (construing R.C. 5711.16, which addresses valuation of the inventory of manufacturers). A manufacturer " 'must include in the calculations any inventory it held even if it did not hold inventory for a full year.' " Id. at 191, 712 N.E.2d 1249, quoting *Rick Case Motors, Inc. v. Tracy* (1994), 71 Ohio St.3d 380, 382, 643 N.E.2d 1137. Smucker Co. and Smucker LLC needed the appraisal of assets in April 2003 to set the final value of that inventory.

{¶ 23} Smucker LLC argues that these shared considerations required the Tax Commissioner to grant its abatement petition just as the official had granted the application of Smucker Co. We disagree for two reasons.

{¶ 24} First, we have already found that the Tax Commissioner may lawfully use the five-year look-back when exercising his discretion to grant or deny abatement under R.C. 5711.28. The use of that look-back is what led to the differential treatment of Smucker Co. and Smucker LLC in this case.

{¶ 25} Second, even if we disregard the discretionary nature of the Tax Commissioner's abatement authority, our review of the record in this case does not compel the conclusion that reasonable cause justified the late filing. As noted, the delay extended beyond April 2003, the date the appraisal became available to the taxpayers.

{¶ 26} Nor do Smucker LLC's other allegations justify the late filing. First, the appellant apparently desired to obtain "lump sum acquisition" treatment on its returns, but the record does not show that Smucker LLC requested that treatment from the Tax Commissioner until September 12, 2003. The returns were filed shortly after that date. Smucker offers no explanation as to why such treatment was not requested earlier.

{¶ 27} Second, Smucker LLC argues that its need to obtain definitive federal tax advice and IRS rulings in relation to the transfer of assets in 2002 justified waiting until 2003 to file the 2002 return. We note that R.C. 5711.03 explicitly requires a new taxpayer who starts business after January 1 of the current year to estimate its "probable average value" of inventory through the end of that year, and the BTA found that the appellant possessed sufficient information to perform that task in a timely manner. But even if there were merit to the argument, the Tax Commissioner did not abuse his discretion in concluding that Smucker LLC was not justified in waiting until *October* 2003 to file the 2002 return.

{¶ 28} Finally, the foregoing discussion establishes that the Tax Commissioner, by subjecting Smucker LLC to treatment different from that which he accorded to Smucker Co., did not deprive Smucker LLC of due process, uniformity of taxation, or equal protection of the law. First, the classification the Tax Commissioner used is the five-year look-back, which in itself displays a rational

basis. Declining to abate penalties of those taxpayers that have more frequently filed late returns is rationally related to the legitimate goal of encouraging taxpayers to file returns on time. Second, to the extent that both Smucker Co. and Smucker LLC are similarly situated with respect to reasonable cause, the Tax Commissioner's finding against the claim of reasonable cause militates *against* granting the abatement here, not in favor of doing so. The appellant's demand for equal treatment implies not that it should receive an abatement, but that Smucker Co. could properly have been denied an abatement. Nor is it entirely irrelevant that Smucker LLC is complaining here only about the treatment of its parent corporation, not about a competitor; this is not a case in which an unfair advantage has been granted to one market participant at the expense of another. Under all these circumstances, we conclude that no violation of due process, uniformity of taxation, or equal protection has occurred.

{¶ 29} We hold that the Tax Commissioner acted within the scope of his discretion by denying Smucker LLC's petition for abatement and that the BTA could reasonably and lawfully affirm that determination.

Decision affirmed.

LUNDBERG STRATTON, O'CONNOR, LANZINGER and CUPP, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent.

———————

PFEIFER, J., dissenting.

{¶ 30} I dissent because I believe that the Tax Commissioner abused his discretion in not granting the abatements in this case. R.C. 5711.28 states: "If it appears that the failure of the taxpayer to timely return or list as required under this chapter * * * was due to reasonable cause and not willful neglect, the commissioner may abate in whole or in part the penalty assessment." J.M. Smucker Company ("Smucker Co.") fundamentally changed its business in 2001 and 2002, causing both Smucker Co. and the newly formed J.M. Smucker, L.L.C. ("Smucker LLC"), to file their personal-property-tax returns late. The same event, the restructuring of the commercial enterprise and the near doubling of the size of Smucker Co. through merger, caused the late filings. The Tax Commissioner granted Smucker Co.'s request for abatement of the late-filing penalty and should also have granted the requests of Smucker LLC.

{¶ 31} The commissioner's failure to abate the late-filing penalty for Smucker LLC was due to the application of unwritten internal policies. As the majority opinion relates, the Department of Taxation routinely grants abatements when the taxpayer has not previously made a delinquent filing in the previous five-year look-back period. In this case, the mechanical application of the look-back

policy—considering the failure of Smucker LLC to file returns for 2002 and 2003 as separate events—was an abuse of discretion. Smucker LLC was not a habitual offender—it was an entity trying to establish what its assets were even after it came into being in 2002. The Tax Commissioner treated Smucker LLC like a serial scofflaw rather than as an entity dealing with the same concerns as Smucker Co.

{¶ 32} The majority suggests that Smucker LLC should have filed inaccurate returns and simply fixed them later. That solution would run contrary to the requirement that the company treasurer declare on the tax return that the return is true, accurate, and complete. The majority cites testimony from a Department of Taxation employee that the department would actually accept tax returns without that declaration and simply allow companies without accurate valuations to declare that their returns are based on "the best available information." The commission's unwritten policy allowing a skirting of its own rules should not have been the basis of a decision to deny the abatements that Smucker LLC requested.

O'DONNELL, J., concurs in the foregoing opinion.

———————

Sleggs, Danzinger & Gill Co., L.P.A., and Todd W. Sleggs, for appellant.

Marc Dann, Attorney General, and Duane M. White, Assistant Attorney General, for appellee.