The STATE ex rel. ERNST et al.

v.

BRUNNER, Secy. of State, et al.

2007-Ohio-7265.]

Court of Common Pleas of Ohio,
Civil Division, Franklin County.

No. 07–MS–10422.

Decided Oct. 30, 2007.

McTigue Law Group, Donald J. McTigue, Mark A. McGinnis, and John M. Stephan, for plaintiffs.

James B. Grandey, Highland County Prosecuting Attorney, for defendants Highland County Board of Elections, Kay Ayers, Steve Hunter, Dinah Phillips, and N. Andrew West.

Marc Dann, Attorney General, and Richard N. Coglianese and Damian W. Sikora, Assistant Attorneys General, for defendant Secretary of State Jennifer L. Brunner.

FRYE, Judge.

## I. Introduction

{¶ 1} This case primarily addresses a provision of the state election code commonly known as the sore-loser statute. In essence, R.C. 3513.04 disqualifies

candidates who unsuccessfully seek nomination in a primary election from becoming candidates "for any office" (with a few exceptions) "at the following general election."

{¶ 2} But, what happens when a new form of government is adopted at the primary election resulting in a substantial change in law, such that the former public office simply ceases to exist? Are those who were candidates for that abolished office in the primary—including even those who were successfully nominated by the voters—left completely out in the cold because they didn't anticipate that the old office would be abolished?

{¶ 3} These questions reach this court after a decision by the Ohio Secretary of State concluded that three persons who sought an abolished office are in fact legally barred from seeking a newly created office. The decision was based upon her understanding of R.C. 3513.04 and the gloss placed upon it by *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 673 N.E.2d 1351. In essence, this presents the age-old difficulty judges often face: whether a statute must be read as if the legislative branch had such an unusual situation in mind when it crafted the sore-loser statute, no matter the absurdity of the result, or whether a court may consider that it probably never occurred to the legislature at all, such that a court may interpose a sensible result that the legislative branch probably would have intended as within the spirit of the statute.[1]

## II.   The Factual Background

{¶ 4} A "Joint Stipulation of Facts and Exhibits" was filed on October 25, 2007. It includes a six-page legal opinion composed by Ohio Secretary of State Jennifer L. Brunner explaining her decision on the matter now before this court. By agreement of counsel reflected on the record on October 29 at the oral hearing of this matter, several additional facts were memorialized. There is no dispute of fact material to the resolution of this case.

{¶ 5} Relators-plaintiffs are Amie Ernst, Bob Bergstrom, and Eugene Kropfelder (the "candidates"). All three are qualified electors of the city of Greenfield in Highland County, Ohio. Defendants-respondents are the Highland County Board of Elections, its four individual members, and Secretary Brunner.

---

1. Judge Learned Hand captured the point: "One school says that the judge must follow the letter of the law absolutely. I call this the dictionary school. No matter what the result is, he must read the words in their usual meaning and stop where they stop. No judges have ever carried on literally in that spirit, and they would not be long tolerated if they did. Nobody would in fact condemn the surgeon who bled a man in the streets to cure him because there was a law against drawing blood in the streets." "How Far Is a Judge Free in Rendering a Decision?" (radio broadcast), 14 May 1933, reprinted in The Spirit of Liberty (2d Ed.1953) 103, 107.

{¶ 6} Last February, all three candidates filed petitions with the Board of Elections seeking their respective political party's nomination for Greenfield City Council at the primary election held May 8, 2007. All three then appeared on the primary ballot. Ernst and Bergstrom won nomination in the Republican primary; Kropfelder failed to win nomination in the Democratic Party primary.

{¶ 7} Greenfield held a special election simultaneously with the May 8 primary election. Voters considered an initiative petition that proposed to change the fundamental form of municipal government to a "City Manager Plan." The ballot language specified that the question before voters was whether to adopt the "plan of government, as provided in chapter 705 sections 705.51 through 705.60 of the Revised Code [of Ohio]." The initiative was adopted. Practically speaking, that rendered all primary nominations for city council under Greenfield's previous plan of government meaningless. In fact, the local board of elections, with the concurrence of the Secretary of State's Office, issued no certificates of nomination to anyone based upon results of the primary election. It was implicitly recognized that no comparable race would appear on the November 2007 general election ballot.

{¶ 8} Ernst, Bergstrom, and Kropfelder each timely filed nominating petitions with the board of elections seeking election to the new, nonpartisan Greenfield City Council. They did so by the statutory deadline in August 2007. On August 29, however, the Highland County Board of Elections split two-to-two on a motion to certify their nominating petitions for the general election under the newly adopted city manager plan. Pursuant to Ohio law, the secretary of state breaks tie votes at local boards of elections. On October 5 she did so, voting against the motion to certify the nominating petitions of the candidates.

{¶ 9} As matters stand, the candidates' names appear on both absentee ballots and on ballots intended for use within Greenfield at the upcoming general election. Unless this court acts favorably, however, any votes cast for the three candidates will not be counted. In addition to these three people, three other candidates are named on ballots, and two more people are running write-in races for the five newly created positions on Greenfield City Council.

### III. The Relief Sought

{¶ 10} The candidates have no right to appeal the secretary's decision breaking the tie vote of the Highland County Board of Elections. *State ex rel. The Limited, Inc. v. Franklin Cty. Bd. of Elections* (1993), 66 Ohio St.3d 524, 526, 613 N.E.2d 634. However, the extraordinary relief afforded by a writ of mandamus may be sought if the secretary's action is the result of "fraud, corruption, abuse of discretion, or clear disregard of statutes or court determinations." Id. "To be entitled to the requested writ of mandamus * * * [one] must

establish a clear legal right to have the board of elections accept her nominating petition for filing, a corresponding clear legal duty on the part of the board to file her nominating petition, and the lack of an adequate remedy in the ordinary course of law." (Citations omitted.) *State ex rel. Brinda v. Lorain Cty. Bd. of Elections,* 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, at ¶ 16.

■ {¶ 11} No one contends that fraud or corruption is presented here. Accordingly, the "abuse of discretion" standard must be met in order to trigger issuance of a writ. That legal standard is used in a variety of contexts under Ohio law. In its classic formulation, an abuse of discretion "connotes more than an error of law or judgment" and implies that a decision which is the focus of judicial examination was "unreasonable, arbitrary, or unconscionable." *State ex rel. Worrell v. Ohio Police & Fire Pension Fund,* 112 Ohio St.3d 116, 2006-Ohio-6513, 858 N.E.2d 380, at ¶ 10 (mandamus to challenge decision denying disability benefits); *State ex rel. Davis v. Pub. Emps. Retirement Bd.,* 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, at ¶ 18 (decision to certify Civ.R. 23 class action); *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140, and cases cited. When a government official has acknowledged expertise and discretionary authority to find the facts, such as a Tax Commissioner's discretion to grant or deny an abatement of a late-filing penalty, the judiciary will apply the deferential abuse-of-discretion standard of review. E.g., *J.M. Smucker, L.L.C. v. Levin,* 113 Ohio St.3d 337, 2007-Ohio-2073, 865 N.E.2d 866, at ¶ 15–16.

■ {¶ 12} The abuse-of-discretion standard is not toothless. It does not insulate every ruling. Thus, while the Supreme Court of Ohio has repeatedly held that "an abuse of discretion connotes more than an error of law or of judgment," if an administrative officer's "interpretation" of a statute was not "reasonable," and not "within the contemplation of the statute" then an abuse of his discretion may be found. *Strongsville Bd. of Edn. v. Zaino* (2001), 92 Ohio St.3d 488, 490, 751 N.E.2d 996. Because this case turns strictly upon a question of law, this court understands that it has authority to examine whether the secretary's legal interpretation of the sore-loser statute was "reasonable" and "within the contemplation of the statute" as measured against the backdrop of the unusual change this year in Greenfield, Ohio.

## IV.   The Statutory Framework Applicable Here

{¶ 13} As last amended in May 2006, the third unnumbered paragraph of R.C. 3513.04 provides:

"*No person who seeks party nomination for an office or position at a primary election* by declaration of candidacy or by declaration of intent to be a write-in candidate and no person who is a first choice for president of candidates seeking election as delegates and alternates to the national conven-

tions of the different major political parties * * * *shall be permitted to become a candidate by nominating petition or by declaration of intent to be a write-in candidate at the following general election for any office* other than * * * [state or local Boards of Education, or Township Trustee]." (Emphasis added.)

{¶ 14} The Supreme Court has called this the "sore loser" statute, observing earlier this month that it "generally bars a person losing in a partisan primary election from participating as a candidate for another office in the succeeding general election, except for certain candidates * * * who run for a board of education at the general election." *State ex rel. Brinda*, supra, at ¶ 26. A "previous, broader version of R.C. 3513.04" was, according to the *Brinda* court, examined in *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 673 N.E.2d 1351. *Purdy* addressed candidates who initially sought nomination to the office of state representative and who, after being defeated in primary elections, filed nominating petitions and statements of candidacy for the State Board of Education. The Supreme Court kept them off the ballot. However, following *Purdy*, R.C. 3513.04 was amended to narrow somewhat the scope of the sore-loser law. That evidences modest legislative intent that the sore-loser statute not be too expansively applied. On the other hand, it offers defendants the argument in this court that the legislature has surgically crafted very precise exceptions, and could have done something more—such as to address the peculiar facts evident in Greenfield where the form of government abruptly changes—had it truly meant to adopt a narrower disqualification for "losers."

{¶ 15} In passing, it is worth noting that three members of the Ohio Supreme Court dissented in *Purdy* and would have found "constitutional deprivation" from the application of the statute prohibiting successive candidacies for different offices. 77 Ohio St.3d at 346, 673 N.E.2d 1351 (Moyer, C.J., Pfeifer, and Cook, JJ., dissenting).

{¶ 16} Former Secretary of State Bob Taft's view of the intent behind the sore-loser statute was cited approvingly by the Court of Appeals for the Third Appellate District when it examined the public policy behind R.C. 3513.04 in *State ex rel. Sweet v. Hancock Cty. Bd. of Elections* (Oct. 25, 1993), Hancock App. No. 5-93-43, 1993 WL 429838. In part, that court observed that the policy behind the statute "is to prevent a person who has lost an election for a party nomination from subsequently running as an independent candidate for either the same office or another office. Statutes of this nature protect the integrity of the primary election process. See *Storer v. Brown* (1974), 415 U.S. 724, 735 [94 S.Ct. 1274, 39 L.Ed.2d 714]." Id. at *8. *Sweet* held that R.C. 3513.04 was no bar to Marcia Barkey's candidacy as an independent on a general election ballot, even though her name had appeared on the May primary ballot, because she never was a valid

candidate in that primary after her petitions were rejected. Accordingly Ms. Barkey was "not precluded by R.C. 3513.04 from running as an independent candidate" in the general election. Id. at *7. " 'In that instance, the individual whose candidacy is invalid is not a choice for the party voters who must select their candidate for the general election.' " Id. at *8 (quoting with approval the appellate brief filed by then-Secretary of State Taft). The reasoning in the *Sweet* decision is compelling here, where the three candidates were never truly a "choice" for Greenfield voters because the new city-manager plan of government completely changed the legal rules.

## V. Rules of Statutory Construction

{¶ 17} "The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the law-making body which enacted it." *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, at ¶ 11. The *Hairston* decision holds that if a statute under review is "ambiguous," a court may engage in "statutory interpretation," but that " 'the intent of the lawmakers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction.' " Id. at ¶ 12, quoting *Slingluff v. Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574, paragraph two of the syllabus.

{¶ 18} Determining "whether contracts, ballot initiatives, statutes or even constitutional provisions are ambiguous" has occupied much judicial effort, because "no clear standard has evolved to determine the level of lucidity necessary for a writing to be unambiguous." *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, at ¶ 11. "When confronted with allegations of ambiguity, a court is to objectively and thoroughly examine the writing to attempt to ascertain its meaning. [Citation omitted.] Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling." Id. "[A]n ambiguity exists if a reasonable person can find different meanings in the * * * [statute] and if good arguments can be made for either of two contrary positions." *4522 Kenny Rd. v. Bd. of Zoning Adjustment*, 152 Ohio App.3d 526, 2003-Ohio-1891, 789 N.E.2d 246, at ¶ 13.

## VI. Statutory Ambiguity in R.C. 3513.04

{¶ 19} The statute begins with the words "[n]o person who seeks party nomination for an office or position at a primary election * * *." That phrase

has been held to be ambiguous. In *State ex rel. Sweet*, supra, the Third District quoted then-Secretary of State Bob Taft's appellate brief as follows: " 'In resolving the ambiguity of the term "seeks," as used in R.C. 3513.04, it is necessary to consider the many Ohio and federal cases holding that public policy favors a free and open elections system and that ambiguity should be resolved in favor of that policy.' " Id. at *10.

{¶ 20} Leaving aside the precedential value of the Third District's ruling that this statute is ambiguous (premised squarely upon the same conclusion reached by a former secretary of state), Secretary Brunner has read the relevant portion of R.C. 3513.04 as providing that "once a person *seeks nomination* in a primary by filing a declaration of candidacy they cannot become a candidate for *any* office at the subsequent general election * * *." (Emphasis sic.) Decision of Secretary Brunner at 4. However, in this court's view, that conclusion does not necessarily follow from the statutory language. It is merely one gloss on the language, and at that is not consistent with the common understanding that this is a sore-loser statute. These candidates never "lost" any election relevant to the newly created Greenfield Council seats. A sensible alternative reading of R.C. 3513.04 is that one never genuinely "seeks" a public office or position if that office or position is legally abolished, as occurred here. That reading preserves the sore-loser rule and gives effect to the intent of the law-making body, while avoiding a plainly unintended result.

{¶ 21} Secretary Brunner recognized in her decision that "the facts of this case are rare, or unique." Id. Given this setting, it would be a harsh rule indeed to completely eliminate three candidates from the public's consideration at next week's general election in Greenfield merely because—before the rules of the game were changed—they indicated interest in public offices that no longer exist.

{¶ 22} At oral argument, counsel for the secretary and the board urged that these public-spirited citizens should be held to have lost their opportunity to be candidates this year under the new form of government. They assert that such a result would be sensible because they read the statutory language as unambiguous, and practically speaking, these candidates ought to have anticipated that the voters might abolish the old form of government in Greenfield. That is, before the primary election was even held, they contend, the candidates should have known that Greenfield's voters would opt to move to the new city manager form of government. The problem with that argument is that clairvoyance is not a requirement of law. Centuries of American Presidents, judges, and scholars have recognized what President Gerald R. Ford made explicit upon taking his oath of office: "[O]ur great Republic is a government of laws, not of men." Public Papers of the Presidents: Gerald R. Ford (1975) 1–2. Practically speaking, that adage means that legal rules are to be made and known in advance and not

created after the fact by those in positions of power. Our government cannot change the rules during an election year and then penalize candidates who failed to guess that such a change was coming.

{¶ 23} There are other significant reasons to interpret R.C. 3513.04 in favor of the position urged by these candidates. One is the interrelationship of the sore-loser statute with other provisions in the state elections code, including one in particular that was triggered by the adoption of the city manager form of government. Looking past the statutory language in R.C. 3513.04 is an unremarkable way to approach a case of this type. For instance, the Supreme Court of the United States has recognized that "ascertainment of the meaning apparent on the face of a single statute need not end the inquiry * * * because the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.' * * * [Thus] [t]he circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect." *Watt v. Alaska* (1981), 451 U.S. 259, 265–266, 101 S.Ct. 1673, 68 L.Ed.2d 80. The candidates point out that R.C. 705.04 required that as soon as Greenfield's new "plan of government" was approved it became legally effective for the selection of candidates, without any delay or transition period. In other words, as soon as the results of the last primary election were certified, changes applicable to candidates for Greenfield Council went into effect immediately along with any other changes applicable to the "nomination and election of officers provided for in such sections." In all other respects, however, the effective date of the new plan was delayed. By statute other changes "shall go into effect upon the first day of January [2008] following the next regular municipal election." R.C. 705.04 can only be reconciled, practically speaking, with R.C. 3513.04 by recognizing that there simply could be no "following general election," as those words are employed in R.C. 3513.04, because the new form of government precluded holding any election for council following the 2007 primary. Once the new city manager plan of government became effective upon adoption by voters, there no longer had been in legal effect any "primary election" at all. The new plan of government completely trumped the old form of government, rendering Greenfield's 2007 primary election for Council a complete nullity. Once the import of the rule in R.C. 705.04 is fully recognized, both statutes are easily harmonized, and the ambiguity in R.C. 3513.04 is resolved.

{¶ 24} There is a broader reason to read R.C. 3513.04 favorably to these candidates. Well-established Ohio law recognizes the obligation of the judiciary "to liberally construe words limiting the right of a person to hold office in favor of those seeking to hold office so that the public may have the benefit of choice from all qualified persons." *State ex rel. Brinda v. Lorain Cty. Bd. of Elections,* 115

Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, at ¶ 33. Similarly, "public policy * * * favors free competitive elections, in which the electorate has the opportunity to make a choice between candidates" as opposed to blindly enforcing "each technical requirement in the petition form." *Stern v. Cuyahoga Cty. Bd. of Elections* (1968), 14 Ohio St.2d 175, 184, 43 O.O.2d 286, 237 N.E.2d 313 (O'Neill, J.). The Ohio Supreme Court has a "pronounced policy of construing election statutes in a manner favoring free and competitive elections." *State ex rel. Giuliani v. Cuyahoga Cty. Bd. of Elections* (1984), 14 Ohio St.3d 8, 10–11, 14 OBR 314, 471 N.E.2d 148. There is no state interest evident here in precluding these three candidates from seeking the Greenfield Council positions under the new city manager form of government.

{¶ 25} Finally, in R.C. 1.49 the General Assembly has enacted a list of factors to consider "[i]f a statute is ambiguous." Among other things, a court may consider the "object sought to be attained" with a particular law, and the "consequences of a particular construction." Both point toward the reading of R.C. 3513.04 advanced by the candidates. When a public office has been eliminated, there are none of the concerns present in the classic sore-loser situation. The consequence of adopting the secretary's reading of R.C. 3513.04, on the other hand, would simply be to diminish the field of candidates available to the voters. There is no public good served by unduly limiting choices for Greenfield's Council being selected under the new plan of government. Indeed, that reading of R.C. 3513.04 has particularly harsh consequence for the two of these candidates who were regarded highly enough to have apparently been nominated to serve in the old version of city council. America's participatory democracy works best, as countless court decisions recognize, when the law encourages candidates to step forward rather than eliminating them from public consideration for no sensible reason.

{¶ 26} R.C. 1.49(F) instructs a court to also consider the "administrative construction of the statute" in resolving ambiguities about the intention of the legislature. Due to its peculiar facts, this case is one of first impression under R.C. 3513.04. While Secretary Brunner concluded that this case was controlled by the recent Supreme Court decision in *Purdy*, 77 Ohio St.3d 338, 673 N.E.2d 1351, that is purely a conclusion of law. The question presented in this particular dispute is not one in which the secretary should receive substantial deference due to her expertise in conducting elections. This court simply does not find *Purdy* controlling on the remarkably unusual facts presented here.

## VII.   *The Constitutional Arguments*

{¶ 27} A variety of constitutional arguments are advanced relative to how rights of the candidates would be infringed assuming the secretary's reading of

R.C. 3513.04 is found to be reasonable. Given the court's holding, it is unnecessary to wade into those questions.

## VIII. Conclusion

{¶ 28} For the foregoing reasons, the court will render final judgment in favor of relators and grant a writ of mandamus. The Highland County Board of Elections shall legally certify the candidates' nominating petitions for the November 7, 2007 general election ballot, and cease advising prospective voters that ballots cast for any of them may not be effective legally. A separate and final judgment consistent with this opinion shall be drafted by counsel for relators, promptly circulated, and submitted to the court.

So ordered.