[Cite as *State ex rel. Knowlton v. Noble Cty. Bd. of Elections*, 126 Ohio St.3d 483, 2010-Ohio-4450.]

THE STATE EX REL. KNOWLTON *v.* NOBLE COUNTY BOARD

OF ELECTIONS ET AL.

[Cite as *State ex rel. Knowlton v. Noble Cty. Bd. of Elections*,

**126 Ohio St.3d 483, 2010-Ohio-4450.]**

*Sheriffs — Qualifications for office — Postsecondary-education requirement — R.C. 311.01(B)(9) — Writ of prohibition to prevent certification of write-in candidate denied.*

(No. 2010-1512 — Submitted September 16, 2010 — Decided

September 22, 2010.)

IN PROHIBITION AND MANDAMUS.

_____

**Per Curiam.**

**{¶ 1}** This is an expedited election action for writs of prohibition and mandamus to prevent respondents, the Noble County Board of Elections and its members, from certifying Stephen S. Hannum's write-in candidacy for the office of Noble County sheriff at the November 2, 2010 general election. Because the board of elections neither abused its discretion nor clearly disregarded R.C. 311.01(B)(9) or 3513.04 by certifying Hannum's candidacy, we deny the writ of prohibition. We dismiss the mandamus claim for lack of jurisdiction.

**Facts**

*Candidacy for Primary Election*

**{¶ 2}** In May 2009, Stephen S. Hannum was appointed Noble County sheriff after Landon Smith resigned. Relator, Denny R. Knowlton Jr., a registered Democrat and Noble County resident, filed a protest pursuant to R.C. 3513.05 to prevent the board of elections and its members from placing Hannum's name on the primary-election ballot. Knowlton claimed that Hannum did not meet the

qualifications in R.C. 311.01(B)(9) to be an eligible candidate for sheriff. Knowlton was the other candidate for the Democratic Party nomination for sheriff.

{¶ 3} At a hearing before the board of elections on Knowlton's protest, Hannum admitted that he had not served as a peace officer at the rank of corporal or above for the period of time specified in R.C. 311.01(B)(9)(a). In attempting to satisfy the alternative postsecondary-education requirement in R.C. 311.01(B)(9)(b), Hannum submitted two uncertified copies of his academic record from Washington State Community College in Marietta, Ohio. The transcripts indicated that Hannum had earned a total of 92 credits, including three for a life-experience portfolio and the remaining 89 credits for life experience, with 29 of those credits for Ohio Peace Officer Training Academy ("OPOTA") courses, which were designated as "OPOTA I," "OPOTA II," and "OPOTA III." At the hearing, Hannum claimed that 72 credit hours at Washington State Community College were equivalent to two years of postsecondary education. At the conclusion of the hearing, the board denied Knowlton's protest against Hannum's candidacy.

*Knowlton I*

{¶ 4} Knowlton filed an expedited election action in this court for writs of mandamus and prohibition to prevent the board and its members from certifying Hannum's candidacy for the Democratic Party nomination for Noble County sheriff and placing his name on the May 4, 2010 primary-election ballot.

{¶ 5} In *State ex rel. Knowlton v. Noble Cty. Bd. of Elections*, 125 Ohio St.3d 82, 2010-Ohio-1115, 926 N.E.2d 284 ("*Knowlton I*"), we granted the requested writ of prohibition to prevent Hannum's candidacy at the primary election. We held that "the board and its members abused their discretion and clearly disregarded R.C. 311.01(B)(9) by denying Knowlton's protest and

2

certifying Hannum's candidacy for sheriff at the May 4 primary election because Hannum did not satisfy any of the three categories in that subsection." Id. at ¶ 34.

{¶ 6} More specifically, we held that Hannum had failed to satisfy the postsecondary-education requirement of R.C. 311.01(B)(9)(b) because at least 29 credits had been earned for ineligible peace-officer training:

{¶ 7} "Notwithstanding the board's suggestions to the contrary, the evidence before the board at the protest hearing supports the conclusion that Hannum has double-counted credits earned for peace-officer training contrary to our decision in *[State ex rel.] Wellington [v. Mahoning Cty. Bd. of Elections*, 120 Ohio St.3d 198, 2008-Ohio-5510, 897 N.E.2d 641]. The OPOTA courses specified on the transcripts that Hannum submitted refer to courses he has taken at the Ohio Peace Officer Training Academy. In fact, the board and its members do not claim that "OPOTA" refers to anything other than academy courses. These courses are manifestly for 'peace officer training,' which, according to *Wellington*, 120 Ohio St.3d 198, 2008-Ohio-5510, 897 N.E.2d 641, at ¶ 30, do not constitute course credit that can satisfy the R.C. 311.01(B)(9)(b) postsecondary-education requirement.

{¶ 8} "Therefore, because 29 credits that Hannum earned were for peace-officer training, they could not be counted toward the postsecondary-education requirement of R.C. 311.01(B)(9)(b). Furthermore, any other 'life-experience' credits related to his job as a peace officer were also ineligible for credit under R.C. 311.01(B)(9)(b) because R.C. 311.01(B)(8) already accounts for Hannum's employment as a peace officer. A contrary holding would render R.C. 311.01(B)(9)(b) superfluous in these circumstances and would permit postsecondary-education credit even though it duplicates other distinct criteria in R.C. 311.01(B) for qualification as a candidate for sheriff. Thus, Hannum earned at most only 63 credits, which, by his own testimony at the protest hearing, is

insufficient to satisfy the postsecondary-education requirement of R.C. 311.01(B)(9)(b)." Id. at ¶ 32-33.

*Candidacy for General Election*

{¶ 9}   On July 26, 2010, Hannum filed a declaration of intent to be a write-in candidate for Noble County sheriff.  Knowlton asked the board of elections whether it had sought information from Hannum relating to his qualifications for his write-in candidacy, and the board then requested that Hannum "provide evidence of the qualifications he has acquired that were deemed lacking by the Supreme Court."

{¶ 10} On August 13, 2010, Knowlton filed a protest with respondent Noble County Board of Elections against Hannum's candidacy.  Knowlton claimed that Hannum did not meet the postsecondary-education requirement of R.C. 311.01(B)(9)(b) and that R.C. 3513.04 barred his candidacy at the general election after he had unsuccessfully sought the Democratic Party nomination for the same office at the preceding primary election.  In his protest, Knowlton claimed that it was filed pursuant to R.C. 3519.16.

{¶ 11} On August 24, the board of elections held a hearing on Knowlton's protest against Hannum's write-in candidacy.  Hannum requested that Knowlton's protest be denied because the protest erroneously referred to R.C. 3519.16 and thus failed to properly invoke the board's authority.  The board noted the objection but decided to allow the parties to address the merits of the protest and to decide the protest on the merits.

{¶ 12} At the hearing, Knowlton presented no witnesses but submitted uncertified copies of Hannum's transcript from Washington State Community College dated January 26 and February 22, 2010.  Knowlton also submitted a letter dated August 12, 2010, in which Michael D. Whitnable, the registrar of the community college, stated that "the minimum of 90 credit hours at Washington State Community College would be equivalent to a two year post secondary

education." The registrar, however, did not indicate whether these two years of postsecondary education were either the minimum required for the school or for the R.C. 311.01(B)(9)(b) postsecondary-education requirement.

{¶ 13} Hannum submitted both testimonial and documentary evidence. An August 18, 2010 college transcript established that by June 2010, Hannum had earned 14 credits in addition to the 92 credits he had previously earned that were considered by the court in *Knowlton I*, which represented a total of 106 credits earned by him at Washington State Community College. The 106 credits included the 29 credits for OPOTA courses that constituted peace-officer training and were held by the court in *Knowlton I* to be ineligible to be counted toward the postsecondary-education requirement of R.C. 311.01(B)(9)(b).

{¶ 14} In an August 19, 2010 letter from the college registrar to the board of elections, the registrar verified that Hannum was considered by the school to have completed the equivalent of two years of postsecondary education and that students at the school are required to carry a minimum of 12 credit hours per quarter to be considered full-time students:

{¶ 15} "Please be advised that Stephen S. Hannum is considered to have completed the equivalent of two years post-secondary education at Washington State Community College. Mr. Hannum has not completed an associate degree. Students must carry a minimum of 12 credit hours per quarter to be considered full-time.

{¶ 16} "Courses with the grade of L 'Life Experience,' are applicable towards a college degree just the same as if the course was graded with a letter of A, B, or C.

{¶ 17} "All degree programs offered at Washington State Community College are approved by the Ohio Board of Regents."

{¶ 18} Hannum testified that if the 29 credits for OPOTA courses were deducted from his total of 106 credits earned from Washington State Community

College, he would still have 77 credits, which exceeds the 72 credit hours required for two years of postsecondary education. According to Hannum's counsel in his argument before the board of elections at the protest hearing, this calculation of 72 hours is based on 12 hours per quarter to be a full-time student with three quarters per year for two years. Hannum further testified that the life-experience credits that he earned for criminal-justice courses came from his experiences before January 2007.

{¶ 19} At the conclusion of the hearing, the board of elections denied Knowlton's protest. As detailed in a subsequent written decision, the board concluded that Hannum had met the educational requirements of R.C. 311.01(B)(9) to be an eligible sheriff's candidate and that R.C. 3513.04 did not bar his write-in candidacy. More specifically, the board made the following pertinent findings:

{¶ 20} "3. Washington State Community College is a duly authorized and registered post secondary institution governed by the Ohio Board of Regents, and authorized to grant post secondary credit for degrees or elective course work.

{¶ 21} "4. Twelve credit hours per quarter is required to maintain full time student status, thus requiring 36 hours per year or 72 hours over the course of two years to qualify as two years of full time post secondary education.

{¶ 22} "5. All courses for grade or by portfolio were approved by an instructor and defined by course syllabus.

{¶ 23} "6. Excluding the 29 hours of OPOTA course work, Respondent has completed 77 hours of post secondary education as of June 16, 2010.

{¶ 24} "7. The Board further finds that §3513.04 ORC is interpreted by the Secretary of State's Office to incorporate not only the initial petition for nomination in a primary but also the submission of the candidate's name to the voters for a decision. This interpretation has been the standard interpretation of the Secretary of State for more than 23 years. The Board of Elections handbook

states that a candidate must run and lose a primary election before becoming ineligible to run as a write-in candidate in the general election, found in EL 24.

{¶ 25} "8.   Respondent was not permitted to seek nomination on the primary ballot due to a lack of post secondary educational requirements, which has now been cured as of June 16, 2010."

### Knowlton II

{¶ 26} On August 27, Knowlton filed this action for writs of mandamus and prohibition to prevent the board and its members from certifying Hannum's write-in candidacy for the office of Noble County sheriff at the November 2, 2010 general election.   The board and its members filed an answer, and we granted Hannum's motion to intervene.   The parties submitted evidence and briefs pursuant to the accelerated schedule for expedited election cases in S.Ct.Prac.R. 10.9.

{¶ 27} This cause is now before the court for our consideration of the merits.

### Legal Analysis

### Mandamus

{¶ 28} Knowlton requests a writ of mandamus to compel the board of elections and its members to consider his protest in accordance with *Knowlton I* and to sustain the protest, thus preventing Hannum's candidacy at the general election.

{¶ 29} This court lacks jurisdiction over complaints in mandamus if the allegations establish that the relator actually requests relief in the nature of a declaratory judgment and a prohibitory injunction.  *State ex rel. Stewart v. Clinton Cty. Bd. of Elections*, 124 Ohio St.3d 584, 2010-Ohio-1176, 925 N.E.2d 601, ¶ 12.   "We have applied this jurisdictional rule to expedited election cases by examining the complaint to determine whether it actually seeks to prevent, rather

than compel, official action." *State ex rel. Evans v. Blackwell*, 111 Ohio St.3d 437, 2006-Ohio-5439, 857 N.E.2d 88, ¶ 20.

{¶ 30} Although some of the allegations and requests contained in Knowlton's complaint are couched in terms of compelling affirmative duties, he actually seeks (1) a declaratory judgment that the board's denial of his protest was erroneous and (2) a prohibitory injunction preventing Hannum from being a write-in candidate for sheriff at the general election.

{¶ 31} Therefore, as in *Knowlton I*, at ¶ 16, because Knowlton seeks relief in the nature of declaratory judgment and prohibitory injunction, we lack jurisdiction to consider his mandamus claim and dismiss it. See also *Stewart*, 124 Ohio St.3d 584, 2010-Ohio-1176, 925 N.E.2d 601, ¶ 14.

*Prohibition*

{¶ 32} Knowlton also requests a writ of prohibition to prevent the board of elections and its members from certifying Hannum's write-in candidacy for the office of Noble County sheriff at the November 2, 2010 general election. To be entitled to the writ, Knowlton must establish that (1) the board of elections and its members are about to exercise quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Eshleman v. Fornshell*, 125 Ohio St.3d 1, 2010-Ohio-1175, 925 N.E.2d 609, ¶ 11.

{¶ 33} Knowlton established the first and third requirements for the writ because the board of elections exercised quasi-judicial authority by denying his protest after a hearing that included sworn testimony, and he lacks an adequate remedy in the ordinary course of law given the proximity of the November 2 general election. Id. at ¶ 12.

{¶ 34} For the remaining requirement, Knowlton asserted in his complaint that the board of elections abused its discretion and clearly disregarded applicable law by denying his protest and certifying Knowlton's candidacy as a write-in

candidate for sheriff. *State ex rel. Tremmel v. Erie Cty. Bd. of Elections*, 123 Ohio St.3d 452, 2009-Ohio-5773, 917 N.E.2d 792, ¶ 15. "An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 305, 686 N.E.2d 238.

*Protest*

**{¶ 35}** As a preliminary matter, Hannum asserts that the writs should be denied because, by citing an inapplicable statute in his protest challenging Hannum's write-in candidacy for sheriff, Knowlton failed to properly invoke the board's authority to rule on his protest.

**{¶ 36}** In his protest, Knowlton cited R.C. 3519.16, which sets forth the protest procedure for statewide initiative and referendum petitions. We have "consistently recognized that R.C. Chapter 3519 applies only to statewide initiative and referendum petitions." *State ex rel. Sinay v. Sodders* (1997), 80 Ohio St.3d 224, 228, 685 N.E.2d 754; *State ex rel. Citizen Action for Livable Montgomery v. Hamilton Cty. Bd. of Elections*, 115 Ohio St.3d 437, 2007-Ohio-5379, 875 N.E.2d 902, ¶ 50. Protests against write-in candidacies are instead governed by R.C. 3513.041.

**{¶ 37}** Nevertheless, because there is no dispute that Knowlton otherwise met the requirements of R.C. 3513.041 to submit a written protest against Hannum's write-in candidacy, the board of elections did not err in determining that Knowlton's mistaken citation concerning the statutory authority for his protest did not divest the board of authority to address and rule on the merits of the protest.

*R.C. 311.01(B)(9)(b) Postsecondary-Education Requirement*

**{¶ 38}** Knowlton first claims, as he did in his protest, that Hannum's write-in candidacy should have been rejected for the same reason that his primary-election candidacy was rejected by this court in *Knowlton I* – Hannum

failed to meet the requirements of R.C. 311.01(B)(9) to be an eligible candidate for sheriff. The dispositive issue is whether Hannum satisfied the postsecondary-education requirement of R.C. 311.01(B)(9)(b), which requires a person who does not meet the supervisory-experience requirement of R.C. 311.01(B)(9)(a) to have "completed satisfactorily at least two years of post-secondary education or the equivalent in semester or quarter hours in a college or university authorized to confer degrees by the Ohio board of regents or the comparable agency of another state in which the college or university is located or in a school that holds a certificate of registration issued by the state board of career colleges and schools under Chapter 3332. of the Revised Code."

{¶ 39} At the protest hearing, Hannum presented evidence that he had earned 106 credits at Washington State Community College. Based on *Knowlton I*, 29 of Hannum's 106 credits could not be counted toward the postsecondary-education requirement of R.C. 311.01(B)(9)(b) because they were for peace-officer training. *Knowlton I*, 125 Ohio St.3d 82, 2010-Ohio-1115, 926 N.E.2d 284, ¶ 32-33; *Wellington*, 120 Ohio St.3d 198, 2008-Ohio-5510, 897 N.E.2d 641, ¶ 30. Without these credits, Hannum earned 77 credits at the community college.

{¶ 40} Knowlton asserts that based on the letter from the college's registrar he presented at the protest hearing, a minimum of 90 credit hours was required for the credits to be equivalent to two years of postsecondary education, and Hannum's total of 77 credits thus was insufficient to meet the R.C. 311.01(B)(9)(b) requirement.

{¶ 41} Knowlton's claim, however, ignores the same registrar's statement that students at the community college must carry a minimum of 12 credit hours per quarter to be considered full-time students and that Hannum was considered by the college to have completed the equivalent of two years of postsecondary education at the school. Furthermore, Hannum testified that his total of 77 credits that could be counted towards the R.C. 311.01(B)(9)(b) postsecondary-education

requirement exceeds the 72 hours he testified were needed for the two years specified by the statute.

**{¶ 42}** The board of elections concluded that Hannum satisfied the educational requirements of R.C. 311.01(B)(9)(b) because "[t]welve credit hours per quarter is required to maintain full time status, thus requiring 36 hours per year or 72 hours over the course of two years to qualify as two years of full time post secondary education." In *Knowlton I*, at ¶ 6, 33, we accepted without discussion Hannum's comparable testimony at the previous board hearing that "72 credit hours at Washington State Community College were equivalent to two years of postsecondary education."

**{¶ 43}** Seventy-seven hours exceeds the 72 hours that the board of elections found were necessary to constitute two years of postsecondary education. The board of elections thus credited Hannum's evidence from the registrar and Hannum over Knowlton's letter from the same registrar. Based on the testimonial and documentary evidence submitted at the protest hearing, the board could reasonably do so. And given the arguably conflicting evidence before the board, the court will not substitute its judgment for that of the board. See *State ex rel. Ross v. Crawford Cty. Bd. of Elections*, 125 Ohio St.3d 438, 2010-Ohio-2167, 928 N.E.2d 1082, ¶ 41; *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 29 (absent evidence to the contrary, public boards and their members are presumed to have properly performed their duties).

**{¶ 44}** Moreover, Knowlton has not established that the board of elections abused its discretion by failing to discount Hannum's other life-experience credits because these credits either were for peace-officer training or related to his job as a peace officer. To be sure, some of Hannum's testimony at the protest hearing relied at least in part on his experience as a police officer. But Hannum further testified that substantially all of his life experiences that formed the basis for his

college credit occurred prior to January 2007 and that he did not get separate credit for criminal-justice courses related to his peace-officer training. Therefore, under these circumstances, Hannum's life-experience credits – other than those for the OPOTA courses that we ruled ineligible in *Knowlton I* – would not duplicate his training that already accounted for his peace-officer employment in R.C. 311.01(B)(8)(b)[1] because it either predated the three-year period specified in R.C. 311.01(B)(8)(b) or did not represent credit for peace-officer training.

{¶ 45} Therefore, the board and its members neither abused their discretion nor clearly disregarded R.C. 311.01(B)(9) by denying Knowlton's protest and certifying Hannum's write-in candidacy for sheriff at the November 2 general election.

### R.C. 3513.04

{¶ 46} Knowlton also claims that Hannum's write-in candidacy should have been rejected by the board for an additional reason – that R.C. 3513.04 barred Hannum's candidacy at the general election following his unsuccessful attempt to become a party nominee for the same office at the preceding primary election.

{¶ 47} R.C. 3513.04 generally prevents persons who have unsuccessfully sought a party nomination at a primary election from running for the same or a different office at the following general election:

{¶ 48} *"No person who seeks party nomination for an office or position at a primary election by declaration of candidacy or by declaration of intent to be a write-in candidate* and no person who is a first choice for president of candidates seeking election as delegates and alternates to the national conventions of the different major political parties who are chosen by direct vote of the electors as

---

1. R.C. 311.01(B)(8)(b) requires that the person seeking to be a candidate for sheriff have "been employed for at least the last three years prior to the qualification date as a full-time law enforcement officer."

12

provided in this chapter *shall be permitted to become a candidate by nominating petition or by declaration of intent to be a write-in candidate at the following general election for any office* other than the office of member of the state board of education, office of a member of a city, local, or exempted village board of education, office of member of a governing board of an educational service center, or office of township trustee." (Emphasis added.)

{¶ 49} In construing this statute, "our paramount concern is the legislative intent" in enacting it. *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. To discern this intent, we must "read words and phrases in context according to the rules of grammar and common usage." *State ex rel. Lee v. Karnes*, 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 23.

{¶ 50} In this regard, the applicable language of R.C. 3513.04 is somewhat ambiguous. "Seek" means "to try to acquire or gain: aim at" and "to make an attempt: TRY." Webster's Third New International Dictionary (1986) 2055. By filing his declaration of candidacy for the primary election, Hannum was manifestly seeking to be the Democratic Party nominee for Noble County sheriff. But the word "seeks" is limited in the statute by the phrase "*at* a primary election," which seems to require that the person attempting to become the party nominee actually be a choice that can be selected by voters at the primary election.

{¶ 51} This interpretation of R.C. 3513.04 is consistent with the preeminent purpose of the statute. "The purpose of Section 3513.04, Revised Code, clearly is to prevent a disappointed party candidate who has failed to be selected as a nominee in the primary from again trying to be placed on the elective ballot by entering the arena as an independent candidate." *State ex rel. Gottlieb v. Sulligan* (1963), 175 Ohio St. 238, 241, 24 O.O.2d 383, 193 N.E.2d 270. In *State ex rel. Brinda v. Lorain Cty. Bd. of Elections*, 115 Ohio St.3d 299,

2007-Ohio-5228, 874 N.E.2d 1205, ¶ 26, we stated that "R.C. 3513.04, the so-called sore-loser provision, * * * generally bars *a person losing in a partisan primary election* from participating as a candidate for [the same or] another office in the succeeding general election." (Emphasis added.) Because Hannum was ruled ineligible in *Knowlton I* to be a candidate for the Democratic Party nomination for Noble County sheriff at the primary election, he did not *lose* in that election.

{¶ 52} This interpretation is also supported by case law. In *State ex rel. Sweet v. Hancock Cty. Bd. of Elections* (Oct. 25, 1993), Hancock App. No. 5-93-43, 1993 WL 429838, the Third District Court of Appeals denied a writ of prohibition to prevent the independent candidacy of a person running for the office of city council at the November 2003 general election when she had previously been disqualified by the same court from being a Republican Party candidate for city council at the preceding primary election. The court of appeals adopted the view of then-Secretary of State Bob Taft that R.C. 3513.04 did not bar the person's independent candidacy because the term "seeks" in the statute was ambiguous and should be construed to apply only to those persons who had been on the primary-election ballot and had lost rather than to those persons whose candidacies had been rejected by a court due to a defect in their petitions:

{¶ 53} " 'The public policy behind R.C. 3513.04 is to prevent a person who has lost an election for a party nomination from subsequently running as an independent candidate for either the same office or another office. Statutes of this nature protect the integrity of the primary election process. * * * The purpose of a primary election is to allow those voters affiliated with a political party to nominate their candidate for the general election. * * * [T]he prohibition is not triggered where a person merely files a declaration of candidacy, but the petition is rejected for insufficient signatures, or other fatal defects. In that instance, the individual whose candidacy is invalid is not a choice for the party voters who

must select their candidate for the general election.' " Id. at *3; see also *State ex rel. Ernst v. Brunner*, 145 Ohio Misc.2d 73, 2007-Ohio-7265, 882 N.E.2d 990, ¶ 19-26 (holding that R.C. 3513.04 is ambiguous and construing it not to bar city council candidates who had run for party nominations in primary election from being candidates in general election for new, nonpartisan city council).

{¶ 54} Finally, the board's decision that R.C. 3513.04 does not bar Hannum's independent candidacy for sheriff "is also consistent with our duty to liberally construe words limiting the right of a person to hold office in favor of those seeking to hold office so that the public may have the benefit of choice from all qualified persons." See *State ex rel. Reese v. Cuyahoga Cty. Bd. of Elections*, 115 Ohio St.3d 126, 2007-Ohio-4588, 873 N.E.2d 1251, ¶ 34; see also *Brinda*, 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 33.

{¶ 55} Therefore, the board of elections and its members did not abuse their discretion or clearly disregard R.C. 3513.04 by denying Knowlton's protest and certifying Hannum's write-in candidacy for sheriff at the November 2 general election.

## Conclusion

{¶ 56} Based on the foregoing, Knowlton has not established his entitlement to the requested extraordinary relief. Therefore, we deny the writ of prohibition to prevent the board and its members from certifying Stephen S. Hannum as a write-in candidate for Noble County sheriff at the November 2, 2010 general election. We also dismiss Knowlton's mandamus claim for lack of jurisdiction.

Judgment accordingly.

PFEIFER, ACTING C.J., and MCMONAGLE, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

CHRISTINE T. MCMONAGLE, J., of the Eighth Appellate District, sitting for BROWN, C.J.

_____

McTigue & McGinnis, L.L.C., Mark A. McGinnis, Donald J. McTigue, and J. Corey Colombo, for relator.

Clifford N. Sickler, Noble County Prosecuting Attorney, and Anthony E. Palmer, Special Counsel, for respondents.

Gottlieb, Johnston, Beam & Dal Ponte, P.L.L., Philip S. Phillips, and James R. Krischak, for intervening respondent.

_____