THE STATE EX REL. EDWARDS LAND COMPANY, LTD., ET AL. *v.* DELAWARE COUNTY BOARD OF ELECTIONS.

[Cite as *State ex rel. Edwards Land Co., Ltd. v. Delaware Cty. Bd. of Elections,* 129 Ohio St.3d 580, 2011-Ohio-4397.]

*Prohibition—R.C. 519.12(H)—Board of Elections abused its discretion in denying relators' protest—Referendum petition was not timely filed—Writ granted.*

(No. 2011-1266—Submitted August 23, 2011—Decided August 31, 2011.)

IN PROHIBITION.

_____

PFEIFER, J.

{¶ 1} This is an original action for a writ of prohibition to prevent respondent, the Delaware County Board of Elections, from certifying a referendum petition and submitting a Liberty Township zoning amendment to the township electorate at the November 8, 2011 general election. Because relators, who applied for the zoning amendment and protested the referendum petition, have established their entitlement to the requested extraordinary relief, we grant the writ.

**Statutory Backdrop**

{¶ 2} This case arises out of the amendment of a township zoning resolution and the subsequent attempt by certain township citizens to force a referendum vote on the amendment. R.C. 519.12 sets out the process for amending township zoning resolutions and for overturning those amendments. Pursuant to R.C. 519.12(A)(1), an owner of property within the area proposed for a zoning change may initiate an amendment to a township zoning resolution by filing an application with the township zoning commission. R.C. 519.12(A)(2)

requires a public hearing before the zoning commission on the proposed amendment. Under R.C. 519.12(E), the zoning commission must solicit a recommendation on the amendment from county or regional planning authorities. That recommendation is considered at the zoning commission's public hearing. After the public hearing, the zoning commission recommends the approval or denial of the proposed amendment, or the approval of some modification of it, and submits that recommendation, the recommendation of the county or regional planning commission, and the text and map pertaining to the proposed amendment to the board of township trustees. R.C. 519.12(E).

{¶ 3} The board of township trustees, in turn, must hold a public hearing on the proposed amendment. R.C. 519.12(E). Pursuant to R.C. 519.12(H), within 20 days of its hearing, the board of trustees must "either adopt or deny the recommendations of the township zoning commission or adopt some modification of them." If the board denies or modifies the commission's recommendations, a majority vote of the board is required. If the board adopts the proposed zoning amendment, with or without modification, the zoning amendment automatically becomes effective 30 days after the board of trustees' action, unless a referendum petition is filed within those 30 days. R.C. 519.12(H).

{¶ 4} The focus of this case is on R.C. 519.12(H), and specifically on whether the petitioners filed their referendum petition within 30 days of the board of trustees' adoption of the zoning amendment at issue. On what date the board of trustees adopted the zoning amendment is the bone of contention.

**Factual and Procedural Background**

{¶ 5} In January 2009, relator Valerie Knowlton submitted a zoning-amendment application to Liberty Township—Rezoning Proposal LTZ 09-01—that would amend the township zoning resolution to rezone 216.3 acres on three parcels of township land from Farm Residence District (FR-1) to Planned Residence District (PR). Knowlton owned the property at that time. Relator

Edwards Land Company, Ltd. ("Edwards Land") is a limited-liability company that will be the developer of the property that is subject to rezoning, and relator Charles P. Driscoll Jr. is the company's president.

{¶ 6} In November 2010, Knowlton transferred the property to relator MRLD Farm, Ltd. ("MRLD"), a limited-liability company of which she is a member, and in January 2011, Knowlton amended her rezoning application to reflect that MRLD was the owner of the property. On January 26, 2011, the Liberty Township Zoning Commission voted to recommend approval of the rezoning proposal.

{¶ 7} The proposed amendment then moved to the Liberty Township Board of Trustees for review. Pursuant to R.C. 519.12(H), it then became the board of trustees' duty to "either adopt or deny the recommendations of the township zoning commission or adopt some modification of them." Beginning on March 15, 2011, and continuing on April 4, 2011, the board of trustees conducted its final public hearing on Rezoning Proposal LTZ 09-01. At the conclusion of the April 4, 2011 hearing, the board of trustees verbally amended the rezoning proposal as follows: (1) "Pillion Way be stubbed and not be connected and, if for any reason it is required to be connected by another authority at a later date, that the connection be restricted to emergency vehicle access only with gates or like devices which will be subject to approval by this Board of Trustees and our Liberty Township Fire Department" and (2) "Red Emerald Way be restricted to emergency vehicle access only, and that it be gated or has such other device as to only allow emergency vehicle access, with such device being subject to approval by the Board of Trustees and the Liberty Township Fire Department." The board of trustees then unanimously approved the application for rezoning as amended, rezoning 216.3 acres on three parcels of township land from Farm Residence District to Planned Residence District.

{¶ 8} At the board of trustees' April 18, 2011 meeting, the board noted that minutes for its March 15 and April 4 meetings would be approved at the board's May 4, 2011 meeting. At the board of trustees' May 4 meeting, the board approved its minutes for the April 4, 2011 meeting; those minutes included the board's approval of the application as amended by the board. May 4 was thus the first date upon which there was an approved, written recordation of the board's April 4 modification and approval of the zoning amendment.

{¶ 9} On June 3, 2011, a group of petitioners filed a referendum petition seeking to submit the board's action approving the rezoning of the property to the electors of Liberty Township. Their filing date fell 60 days after the board of township trustees' April 4 voice-vote adoption of the amended version of MRLD's Rezoning Proposal LTZ 09-01 and 30 days after the board's May 4 approval of the minutes for the April 4 hearing. The petitioners specified that they sought a referendum "on the proposal to amend the Zoning Map of the unincorporated area of Liberty Township, Delaware County, Ohio," that was "[a]dopted on the 4th day of May, 2011 by the Liberty Township Board of Trustees, Rezoning Proposal LTZ-09-01 [and that] would permit the rezoning of 216+ acres at the intersection of Home Road and Olentangy River Road from Farm Residence District (FR-1) to Planned Residence District (PR)."

{¶ 10} With their petition, the petitioners submitted a black-and-white copy of the official zoning map for all of Liberty Township. The map was not highlighted or otherwise marked to delineate the 216.3-acre property subject to the zoning amendment being challenged.

{¶ 11} On June 23, 2011, relators, Edwards Land, Driscoll, MRLD, and Knowlton, submitted a protest to the Delaware County Board of Elections against the referendum petition. In their protest, relators specified eight separate grounds, including the two grounds argued here—that the referendum petition was not timely filed and that the petitioners did not submit an appropriate map of the area

4

affected by the zoning proposal. On June 28, the board of elections certified the referendum petition and placed the rezoning issue on the November 8, 2011 general-election ballot.

{¶ 12} On July 18, 2011, the board of elections held a hearing on relators' protest. Relators and the petitioners were represented by counsel at the hearing, and sworn testimony was submitted. Kathy Melvin, the clerk of the Liberty Township Board of Trustees, testified that the board of trustees addresses zoning amendments by motion at a public hearing rather than by written resolution because the board considers zoning amendments to require only an "administrative review." The board of elections voted two-to-one to deny the relators' protest and to affirm its prior certification of the referendum to the November 8 election ballot. The board also issued a document entitled "Findings of Fact and Conclusion and Decision" in which it gave reasons for rejecting each of relators' protest grounds.

{¶ 13} Eight days later, on July 26, 2011, relators filed this action for a writ of prohibition to prevent the board of elections from certifying to the November 8 election ballot a referendum on Liberty Township Rezoning Proposal LTZ 09-01 and a writ of mandamus to compel the board of elections to sustain relators' protest against the referendum petition. Relators also filed a motion to expedite. The board of elections filed an answer and a response to the motion to expedite.

{¶ 14} On August 11, this court granted an expedited alternative writ on relators' prohibition claim and issued an accelerated schedule for the submission of briefs and evidence. 129 Ohio St.3d 1433, 2011-Ohio-3948, 951 N.E.2d 440. We also dismissed relators' mandamus claim. Id.; see, e.g., *State ex rel. Phillips v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 535, 537, 757 N.E.2d 319, quoting *State ex rel. Grendell v. Davidson* (1999), 86 Ohio St.3d 629, 634, 716 N.E.2d 704 (" 'In general, if the allegations of a complaint for a writ of

mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction' ").

{¶ 15} Although none of the referendum petitioners intervened as parties in this case, referendum-petition-circulator Robert Cohen filed an amicus curiae brief in support of the board of elections.

{¶ 16} This cause is now before the court for our consideration of the merits.

## Law and Analysis

### *Prohibition*

{¶ 17} To be entitled to the writ of prohibition they seek, relators must establish that (1) the board of elections is about to exercise or has exercised quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Eshleman v. Fornshell*, 125 Ohio St.3d 1, 2010-Ohio-1175, 925 N.E.2d 609, ¶ 11.

{¶ 18} Relators have satisfied the first requirement for the writ because the board of elections exercised quasi-judicial authority by denying their protest after a hearing that included sworn testimony. *State ex rel. Knowlton v. Noble Cty. Bd. of Elections*, 126 Ohio St.3d 483, 2010-Ohio-4450, 935 N.E.2d 395, ¶ 33.

{¶ 19} Relators have also established the third requirement for the writ because of the proximity of the election. Id. The board of elections erroneously asserts that because S.Ct.Prac.R. 10.9, which governs procedure for expedited election cases, applies only to actions filed within 90 days of an election, the rule implies that when an election is more than 90 days away, relators have other legal remedies available to them. We have never so held, and we have recognized the propriety of writ actions challenging elections-board decisions in cases that were not governed by S.Ct.Prac.R. 10.9. See *State ex rel. Allen v. Warren Cty. Bd. of*

*Elections*, 115 Ohio St.3d 186, 2007-Ohio-4752, 874 N.E.2d 507 (mandamus case filed on July 17, 2007, to challenge July 3, 2007 board decision regarding the November 6, 2007 election).

{¶ 20} For the remaining requirement, "[i]n extraordinary actions challenging the decisions of * * * boards of elections, the standard is whether they engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11.

{¶ 21} Relators claim that the board of elections abused its discretion and clearly disregarded R.C. 519.12(H) in denying their protest.

*R.C. 519.12(H)'s 30-Day Filing Requirement*

{¶ 22} R.C. 519.12(H) specifies that a township zoning amendment becomes effective 30 days after it is adopted by the board of township trustees unless a referendum petition is filed within the 30 days after it is adopted:

{¶ 23} "*The proposed amendment, if adopted by the board, shall become effective in thirty days after the date of its adoption, unless, within thirty days after the adoption, there is presented to the board of township trustees a petition*, signed by a number of registered electors residing in the unincorporated area of the township or part of that unincorporated area included in the zoning plan equal to not less than eight per cent of the total vote cast for all candidates for governor in that area at the most recent general election at which a governor was elected, requesting the board of township trustees to submit the amendment to the electors of that area for approval or rejection at a special election to be held on the day of the next primary or general election that occurs at least ninety days after the petition is filed. Each part of this petition shall contain the number and the full and correct title, if any, of the zoning amendment resolution, motion, or application, furnishing the name by which the amendment is known and a brief summary of its contents." (Emphasis added.)

**{¶ 24}** R.C. 519.12(H) required the referendum petitioners to present their petition to the board of township trustees within 30 days after the "adoption" by the board of Rezoning Proposal LTZ 09-01 as amended. The parties disagree over the meaning of the word "adoption." Relators argue that the proposal was adopted when the board of township trustees voted to approve the rezoning on April 4; the board of elections asserts that the adoption occurred on May 4, when the board of township trustees approved the minutes recording its prior vote.

**{¶ 25}** In construing R.C. 519.12(H), our paramount concern is the legislative intent in its enactment, and we determine this intent by reading undefined statutory language according to the rules of grammar and common usage. *State ex rel. Wellington v. Mahoning Cty. Bd. of Elections*, 120 Ohio St.3d 198, 2008-Ohio-5510, 897 N.E.2d 641, ¶ 29. The word "adoption" is not defined in the statute. In its pertinent common definition, the word "adopt" means "to vote to accept." http://dictionary.reference.com/browse/adopt (accessed Aug. 29, 2011); see also The Oxford English Dictionary (2d Ed.1989) 171, defining "adopt" as "[t]o approve, to confirm." According to the uncontroverted testimony of Kathy Melvin, the clerk of the Liberty Township Board of Trustees, the board addresses zoning amendments by motion at a public hearing rather than by written resolution because the board considers zoning amendments to require only an "administrative review." Indeed, under R.C. 519.12(H), the board of trustees is reviewing a recommendation of the zoning commission.

**{¶ 26}** The board thus accepted the recommendation of the zoning commission with modifications at its April 4, 2011 hearing by unanimously granting a motion to approve the application for rezoning, as amended. The minutes describe the action as follows:

**{¶ 27}** "Mr. Mann moved to approve the Application as amended. The motion was seconded by Mr. Sybert and the roll call vote: Ms. Carducci-yes, Mr. Sybert-yes, and Mr. Mann-yes. The motion passed with a 3-yes and 0-no vote."

**{¶ 28}** The application was approved upon the vote. There was a motion to approve the amendment, and the motion passed. Thus, April 4 was the date that the board approved the application for rezoning by vote, adopting a modified version of the zoning commission's recommendation. The common meaning of "adoption" does not require the further step of recordation of the approval.

**{¶ 29}** It might be preferable for the board of township trustees to adopt contemporaneous written resolutions in approving zoning amendments, but in the absence of any statutory or other legal requirement, the board had no duty to do so. "We will not add a requirement that does not exist in the statute." *State ex rel. Columbia Reserve Ltd. v. Lorain Cty. Bd. of Elections*, 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 32.

**{¶ 30}** In contrast, R.C. 519.12(E) sets the time period for the board of township trustees to have a public hearing on a zoning amendment after the zoning commission has made its recommendation, and it does require the recordation of the zoning commission's recommendation. The zoning commission must "submit" its recommendation to the board of trustees, and the board of trustees must hold a public hearing "not * * * more than thirty days from the date of the receipt of [the zoning commission's] recommendation." Thus, R.C. 519.12 calls for the submission and receipt of a recommendation, which implies that the zoning commission's recommendation must be written. The 30-day clock starts after the board of trustees receives the zoning commission's submission. R.C. 519.12(H) requires no submission or receipt of the board of trustees' decision in order to start the 30-day referendum clock. It starts once the decision is made.

**{¶ 31}** R.C. 121.22(C), which is cited by the board of elections and amicus curiae, is not relevant in this case. R.C. 519.12(H) need not be read in pari materia with R.C. 121.22(C), because they are not logically related in this case. R.C. 121.22(C) is Ohio's open-meetings statute. It provides:

**{¶ 32}** "All meetings of any public body are declared to be public meetings open to the public at all times. A member of a public body shall be present in person at a meeting open to the public to be considered present or to vote at the meeting and for purposes of determining whether a quorum is present at the meeting.

**{¶ 33}** "The minutes of a regular or special meeting of any public body shall be promptly prepared, filed, and maintained and shall be open to public inspection."

**{¶ 34}** No one claims that the board of trustees' hearing was not public. No one has complained that the township failed to produce minutes. Nothing in the record suggests that the petitioners sought and were denied minutes from the April 4 hearing. If they had been denied those minutes, mandamus would lie to force their preparation pursuant to R.C. 121.22(C). *State ex rel. Cincinnati Post v. Cincinnati* (1996), 76 Ohio St.3d 540, 545, 668 N.E.2d 903. But there is no language in R.C. 121.22(C) that says that a legislative enactment does not become official until minutes are approved. "Minutes serve as records of actions, not as actions themselves." *Davidson v. Hanging Rock* (1994), 97 Ohio App.3d 723, 733, 647 N.E.2d 527. In *Davidson*, the court rejected the proposition that under R.C. 121.22, a failure to approve meeting minutes renders all actions taken during the meeting void.

**{¶ 35}** The board of elections and amicus curiae assert that allowing the board of township trustees to adopt a zoning amendment by voice vote and modify that amendment in the process, without requiring the board of township trustees to incorporate its action contemporaneously in written form to start the 30-day period to file a referendum petition, unduly restricts the right of referendum under R.C. 519.12(H). As an abstract principle, that assertion may well have merit. But R.C. 519.12(H) does not require a board of township

trustees to create a writing noting that it adopted the recommendation of the zoning commission, even when the board makes modifications.

{¶ 36} And in this case, there is no evidence that the referendum petitioners either lacked notice of the board of township trustees' April 4 adoption of the zoning amendment or were unfairly prejudiced in their ability to submit a referendum petition because of the lack of a written record on the date that the board of township trustees adopted the amendment. To the contrary, there is evidence that the referendum petitioners' representative at the protest hearing before the board of elections—a petition circulator named Tony Gioffre—was present and spoke at the board of township trustees' April 4 hearing. Similarly, amicus curiae Robert Cohen, a second petition circulator, was also present at two board of township trustees' meetings.

{¶ 37} In addition, interested citizens could have asked to see the unofficial meeting minutes of the board of township trustees, which were completed within a week or a week and a half after the April 4 hearing. Or they could have requested to listen to the audio record of that hearing. The introduction to the April 4, 2011 minutes even states: "The audio recording, resolutions passed, and any attachments constitutes an accurate record of the Liberty Township Trustee Proceedings at the above dated meeting as determined by the Fiscal Officer. The following summary is provided as an overview of the meeting and a road map to the audio recording."

{¶ 38} And although the board of township trustees did, in fact, amend the proposed zoning amendment, these amendments were not material to the referendum petitioners' challenge, because the petition itself did not even mention these amendments. The language ultimately used by the petitioners in their petition could have been taken from MRLD's amended zoning application. The application and maps related to it must be available for viewing by the public ten days before the zoning-commission hearing and ten days before the board of

township trustees' hearing. R.C. 519.12(C)(5) and (F)(5). Thus, the petitioners here did not—as the board of elections claims—"lack the details necessary to prepare a valid referendum petition" because of the absence of written minutes or a resolution.

{¶ 39} Finally, a contrary ruling would engender unreasonable results. Leaving the citizens of Liberty Township unable to vote on an important community issue is unfortunate, but the board of elections' advocated construction of R.C. 519.12(H)—that the zoning amendment in this case was not adopted until written minutes of its adoption were adopted—is untenable. This new definition of the word "adoption" would elevate hearing minutes to the status of legislation and invite confusion in any number of future cases, suggesting to Ohioans that no governing body—county commissioners, city council, or school board—or any other public board, local or state, performs any official act until a written record of the act is prepared and approved. Every legislative act at every level of government would be held in abeyance until the preparation and approval of minutes. Government cannot work that way.

{¶ 40} Therefore, based on the plain language of R.C. 519.12(H) as well as the uncontroverted evidence adduced at the protest hearing, the referendum petition, which was filed 60 days after the board of township trustees' adoption of the amendment, was 30 days too late to prevent the amendment from taking effect. The board of elections should have thus sustained relators' protest on this ground.

## Conclusion

{¶ 41} Based on the foregoing, the board of elections abused its discretion and clearly disregarded R.C. 519.12(H) by denying relators' protest, certifying the referendum petition, and submitting the zoning amendment to the Liberty Township electorate at the November 8, 2011 election ballot. The 30-day filing period to submit a timely referendum petition demands strict compliance; "the

settled rule is that election laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election provision expressly states that it is." *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 476, 764 N.E.2d 971 (plurality opinion). And "[a]lthough we liberally construe R.C. 519.12(H) in favor of the right of referendum, that statute's requirements were not followed here." *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 47. Because the applicable provisions of R.C. 519.12(H) are unambiguous, we must apply them rather than construe them.

{¶ 42} Therefore, because relators have established their entitlement to the requested extraordinary relief, we grant the writ of prohibition. By so holding, we need not address relators' remaining contention that the board of elections abused its discretion and clearly disregarded applicable law by not sustaining their protest against the referendum petition based on the appropriate-map requirement of R.C. 519.12(H).

Writ granted.

LUNDBERG STRATTON, O'DONNELL, and CUPP, JJ., concur.

O'CONNOR, C.J., and LANZINGER and MCGEE BROWN, JJ., dissent.

_____

**CUPP, J., concurring.**

{¶ 43} I concur in the foregoing opinion, but with reservations.

{¶ 44} It concerns me that an official action of a board of township trustees as significant as approving a change in the township zoning resolution relating to a specific parcel of real estate does not have to be in writing in either the form of a resolution or a written motion acting as a substitute for a formal resolution.

{¶ 45} Written documents are often required to make governmental actions official: a court "speaks" only through its written journal entries, a

legislature "speaks" only through its written statutes and resolutions, and a city "speaks" only through its written ordinances. Analogously, if a board of township trustees can speak only through its written resolutions, this board has not "said" anything official even yet.

{¶ 46} However, as the opinion notes, there is no statutory requirement that a board of township trustees take its action in writing. Moreover, these foregoing concerns were not directly raised or argued by the parties and, therefore, are not presently before this court. Consequently, I must concur.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 47} This case involves the interplay between the people's paramount right of referendum, the limited 30-day period in R.C. 519.12(H) to exercise that preeminent right to challenge a township zoning amendment, and the duty of the board of township trustees to promptly prepare, file, and maintain minutes of its meetings in the seemingly unique circumstance in which the board chooses not to issue written resolutions or ordinances for these zoning amendments. Because the majority misunderstands the interaction between the people's right and the township's duty, grants the requested extraordinary relief in prohibition, and thereby unreasonably divests the township citizens of their important right of referendum, I respectfully dissent.

**Right of Referendum**

{¶ 48} The people's right of referendum to challenge legislation "is a means for direct political participation, allowing the people the final decision, amounting to a veto power, over enactments of representative bodies." *Eastlake v. Forest City Ents., Inc.* (1976), 426 U.S. 668, 673, 96 S.Ct. 2358, 49 L.Ed.2d 132. It is " 'one of the most essential safeguards to representative government.' " *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 20, quoting *State ex rel. Nolan v. ClenDening* (1915), 93 Ohio

St. 264, 277, 112 N.E. 1029. Although Section 1f, Article II of the Ohio Constitution "does not confer any constitutional right of referendum on township electors challenging township resolutions," R.C. 519.12(H) provides a statutory right of referendum for township zoning amendments. *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 33, 37.

{¶ 49} We have held that "R.C. 519.12(H) should be liberally construed to permit the exercise of the power of referendum by township electors even without a constitutional provision applicable to townships comparable to that applicable to municipalities in Section 1f, Article II, Ohio Constitution." Id. at ¶ 37; see also *State ex rel. Miller Diversified Holdings, L.L.C. v. Wood Cty. Bd. of Elections*, 123 Ohio St.3d 260, 2009-Ohio-4980, 915 N.E.2d 1187, ¶ 36. Yet with little consideration of the vital right of referendum, the majority readily discounts our duty to liberally construe R.C. 519.12(H).

## R.C. 519.12(H)'s 30-Day Filing Requirement

{¶ 50} As the majority acknowledges, R.C. 519.12(H) specifies that to prevent a township zoning amendment from becoming effective 30 days after the date it was adopted, a referendum petition must be filed within that 30 days. I am mindful that the ordinary definition of the word "adoption" does not generally require the further step of recordation of the approval by vote on a motion, as the majority observes. As a general precept, in the vast majority of circumstances, this is appropriate.

{¶ 51} However, R.C. 519.12(H) cannot be construed in a vacuum. And I disagree with the majority's dismissal of R.C. 121.22(C) as irrelevant. R.C. 121.22(C) provides that "[t]he minutes of a regular or special meeting of any public body shall be *promptly prepared, filed, and maintained and shall be open to public inspection*." (Emphasis added.) See *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 46 ("statutes that relate to

the same subject matter must be construed in pari materia so as to give full effect to the provisions"). The minutes compelled by R.C. 121.22(C) are a necessary component that facilitates a citizen's right of referendum, especially when the township does not adopt written resolutions for its zoning amendments. Because of the unquestioned importance of the right of referendum as well as the fact that the Liberty Township Board of Trustees does not adopt written resolutions for its zoning amendments, the majority should have liberally construed R.C. 519.12(H) in pari materia with R.C. 121.22(C).

**{¶ 52}** Allowing the board of township trustees to adopt a zoning amendment by voice vote and to modify that amendment in the process with detailed oral amendments to the proposal, without requiring the board to incorporate its action contemporaneously in written form to start the critical 30-day period to file a referendum petition, unduly restricts the township electors' right of referendum under R.C. 519.12(H). "One of the strengths of American government is the right of the public to know and understand the actions of their elected representatives. This includes not merely the right to know a government body's final decision on a matter, but the ways and means by which those decisions were reached." *White v. Clinton Cty. Bd. of Commrs.* (1996), 76 Ohio St.3d 416, 419, 667 N.E.2d 1223.

**{¶ 53}** The Liberty Township Board of Trustees does not enact written resolutions memorializing their zoning amendments, because they consider zoning-amendment proposals to require only an "administrative review." But the zoning amendment here is manifestly a legislative act subject to referendum. See *State ex rel. Zonders v. Delaware Cty. Bd. of Elections* (1994), 69 Ohio St.3d 5, 11, 630 N.E.2d 313 ("Generally, the adoption of a zoning amendment, like the enactment of the original zoning ordinance, is a legislative act which is subject to referendum"); *Tuber v. Perkins* (1966), 6 Ohio St.2d 155, 157, 35 O.O.2d 255,

216 N.E.2d 877 ("the action of a Board of Township Trustees in adopting or amending a zoning regulation is a legislative action").

{¶ 54} Without a written record of the zoning amendment's approval by the board of township trustees, citizens are hampered in exercising their time-sensitive right to referendum. See *Bd. of Twp. Trustees v. Spring Creek Gravel Co., Inc.* (1975), 45 Ohio App.2d 288, 289-290, 74 O.O.2d 409, 344 N.E.2d 156 ("The failure to record the adoption of  [a township zoning] amendment substantially affects the right to request a referendum"); see also *Crates v. Garlock Bros. Constr.*, Hancock App. No. 5-91-8, 1991 WL 229216, *3 (rezoning by township trustees is legislative in nature, and in the absence of a record, a rezoning cannot be presumed).

{¶ 55} By way of example, citizens challenging a zoning amendment need a written record of the amendment to accurately summarize it for purposes of properly invoking their statutory right of referendum. See R.C. 519.12(H); *State ex rel. Gemienhardt v. Delaware Cty. Bd. of Elections*, 109 Ohio St.3d 212, 2006-Ohio-1666, 846 N.E.2d 1223, ¶ 57 (referendum petitioners must strictly comply with R.C. 519.12(H)'s brief-summary requirement). As noted by the board of elections, "[w]here strict compliance is required, it is unreasonable to require a referendum petition to be prepared from memory or mere notes."

{¶ 56} Without any evidentiary support, the majority admonishes that "interested citizens" could have requested to listen to audio recordings of the meeting. Majority opinion at ¶ 37. However, the majority overlooks the lack of *any sworn testimony* concerning whether the recordings or the meeting minutes *were actually available to citizens before the board's approval of the minutes*. Relators, as the protestors against the referendum petition, manifestly had the burden of establishing that the referendum petition violated the R.C. 519.12(H) 30-day requirement, but much of the so-called evidence they—and the majority— rely on here was not properly submitted as sworn evidence at the board's protest

hearing. Instead, it is little more than mere supposition and baseless speculation. "[A] claim that the board of elections abused its discretion * * * [can]not be based on evidence that was never presented to it." *State ex rel. Stoll v. Logan Cty. Bd. of Elections,* 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 40.

{¶ 57} Therefore, after construing R.C. 519.12(H) in pari materia with R.C. 121.22(C) and abiding by the court's duty to liberally construe the statutory right of referendum in favor of its exercise, I would hold that the word "adoption" for purposes of the critical 30-day deadline to submit a referendum petition refers to the written recordation of the zoning amendment, either by resolution or by detailed minutes. This result is particularly justified under the circumstances present in this case, which include the absence of a written resolution and the 30-day delay in recording the verbal approval of the board, including its verbal amendments to relators' zoning proposal.

{¶ 58} The majority's narrow construction of the pertinent provisions will harshly and unduly restrict—and in some cases, unfairly eliminate— citizens' paramount right of referendum, particularly the rights of those citizens who may not have the ability to attend the board of township trustees' meetings. See *White*, 76 Ohio St.3d at 420, 667 N.E.2d 1223 ("keeping full minutes [of board of county commissioners' meetings] allows members of the public who are unable to attend the meetings in person to obtain complete and accurate information about the decision-making process of their government. * * * Most people's day-to-day schedule leaves them with far too little time to attend government meetings").

{¶ 59} Moreover, the majority's decision will allow a board of township trustees to thwart the township citizens' right of referendum by intentionally delaying the preparation of a written record of the approval of a zoning amendment. By narrowly construing R.C. 519.12(H) without deference to the right of referendum, the majority has engendered this unreasonable result. *Colvin*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 58 (courts have duty to

construe constitutional and legislative provisions to avoid unreasonable or absurd results).

{¶ 60} Insofar as the majority opinion cites a veritable parade of horribles to suggest that its holding, which usurps the township electors' critical right to approve or reject a zoning amendment that directly affects them, is somehow warranted, suffice it to say that none of those particular circumstances are before the court in this case. That is, the court could deny relators' request for extraordinary relief in prohibition without "suggesting to Ohioans that no governing body—county commissioners, city council, or school board—or any other public board, local or state, performs any official act until a written record of the act is prepared and approved" or holding that "[e]very legislative act at every level of government would be held in abeyance until the preparation and approval of minutes." Majority opinion at ¶ 39. Not every legislative act involves the unique circumstances of this case, i.e., the important right of referendum, an abbreviated statutory time period in which citizens can assert that right, and the practice of a board of township trustees not to adopt zoning amendments by a contemporaneous written resolution. Therefore, upholding the board of elections' denial of relators' protest and recognizing the township citizens' right to referendum here would not have drastic consequences in other unrelated contexts as the majority portends.

{¶ 61} I would therefore hold that the board of elections did not act in an arbitrary, unconscionable, or unreasonable manner in determining that the referendum petition was timely filed. In my view, the board of elections properly rejected relators' protest on this ground.

## R.C. 519.12(H)'s Appropriate-Map Requirement

**{¶ 62}** I would further hold that the board of elections did not abuse its discretion or clearly disregard R.C. 519.12(H) by determining that the map submitted by the referendum petitioners was appropriate.[1]

**{¶ 63}** R.C. 519.12(H) requires that the referendum petition "be accompanied by an appropriate map of the area affected by the zoning proposal." A "map accompanying a referendum petition [is] appropriate * * * for purposes of R.C. 519.12(H) if it does not mislead the average person about the area affected by the zoning resolution." *McCord*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 63. An objective rather than a subjective test is used to determine whether a referendum-petition map is appropriate. *State ex rel. Columbia Reserve Ltd. v. Lorain Cty. Bd. of Elections*, 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 34.

**{¶ 64}** The board of elections determined that "[t]he map is appropriate under the facts and circumstances of this case."

**{¶ 65}** Relators assert that the board abused its discretion and clearly disregarded applicable law in so holding based on our decision in *Columbia Reserve*, 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815. In that case, this court held that the map filed by the referendum petitioners was not appropriate, because it was a drawing that had been previously submitted with a different township zoning resolution than the one that was the subject of the referendum, it did not include all the area affected by the resolution and did not highlight the area, and the referendum petitioners could have easily avoided any defect by filing the map that had been previously approved by the board of township trustees and that was attached to the resolution that was the subject of the referendum. Id. at ¶ 35, 37.

---

1. Because the majority found relators' first argument persuasive, it did not address this remaining claim.

{¶ 66} *Columbia Reserve*, however, is distinguishable in significant particulars from this case. First, the referendum petitioners here did not submit a map relating to a different zoning resolution. Second, the Liberty Township Board of Trustees did not approve a map that it determined accurately reflected the rezoning. Third, the referendum petitioners submitted a map that included all of the area affected by the zoning amendment. Although it is true that the map included the entire township and the petitioners did not highlight the smaller area subject to the rezoning, the text of the petition together with the map would not have misled the average person about the area affected by the amendment. The text of the petition specified the area and location of the property—"216+ acres at the intersection of Home Road and Olentangy River Road"—as well as the specific parcels involved. Fourth, the referendum petitioners here could not have easily avoided any perceived defect by filing one of the alternate maps submitted by relators in the zoning process. None of the maps submitted by relators in the zoning process included the board of township trustees' amendments regarding road restrictions, and the maps appear to either contain property outside the affected area or depict less than the entire affected area. That is, if the referendum petitioners had done as relators now claim they should have—submitted one of relators' zoning maps with the referendum petition—it is likely that relators would claim that that map was likewise defective.

{¶ 67} Consequently, *Columbia Reserve* does not require a finding that the referendum petitioners violated the appropriate-map requirement of R.C. 519.12(H). The board of elections did not abuse its discretion or clearly disregard R.C. 519.12(H) by determining that the map submitted by the referendum petitioners was appropriate.

{¶ 68} Therefore, I would hold that the board of elections properly rejected relators' protest on this ground as well.

**Conclusion**

**{¶ 69}** The board of elections neither abused its discretion nor clearly disregarded R.C. 519.12(H) by denying relators' protest, certifying the referendum petition, and submitting the zoning amendment to the Liberty Township electorate on the November 8, 2011 election ballot. The referendum petitioners complied with the requirements of R.C. 519.12(H). Therefore, relators have not established their entitlement to the requested extraordinary relief, and this court should deny the writ of prohibition. Because the majority fails to correctly apply the applicable law and thereby cripples the township electors' critical right of referendum, I respectfully, but vigorously, dissent.

LANZINGER and MCGEE BROWN, JJ., concur in the foregoing opinion.

_____

McTigue & McGinnis, L.L.C., Donald J. McTigue, Mark A. McGinnis, and J. Corey Colombo; and Crabbe, Brown & James, L.L.P., Larry H. James, Andy Douglas, and Laura M. Comek, for relators.

Carol Hamilton O'Brien, Delaware County Prosecuting Attorney, and Christopher D. Betts, Assistant Prosecuting Attorney, for respondent.

Robert G. Cohen, pro se, urging denial of the writ as amicus curiae.

_____