[Cite as *Kilroy v. Peters*, 2013-Ohio-3384.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

MICHAEL P. KILROY, et al.

      Plaintiffs-Appellees

v.

WILLIAM PETERS/JACKSON TOWNSHIP BOARD OF TRUSTEES, et al.

      Defendants-Appellants

Appellate Case No.    25547

Trial Court Case No.   2007-CV-5170

(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of August, 2013.

. . . . . . . . . . .

CHRISTOPHER R. CONARD, Atty. Reg. No. 0039751, DAVID P. PIERCE, Atty. Reg. No. 0061972, SASHA ALEXA M. VANDEGRIFT, Atty. Reg. No. 0080800, 33 West First Street, Suite 600, Dayton, Ohio 45402
      Attorneys for Plaintiffs-Appellees

MATHIAS H. HECK, JR. by TODD M. AHEARN, Atty. Reg. No. 0069674, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Defendants-Appellants

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendants-Appellants, William Peters, Thomas Sears, and Debra Johnson, appeal individually and in their capacity as Jackson Township Trustees (collectively, "Trustees"), from an order enforcing a settlement agreement with Plaintiffs-Appellees, William and Vickie Kilroy.   The order also awarded attorney fees to the Kilroys.

{¶ 2}    In support of their appeal, the Trustees contend that the trial court erred in concluding that they agreed to the settlement in their official capacities at a public meeting.   The Trustees further contend that the trial court erred in finding that they agreed to the settlement in their individual capacities.   Finally, the Trustees contend that the trial court erred in concluding that the Kilroys are entitled to attorney fees.

{¶ 3}    We conclude that the trial court did not err in finding that the Trustees agreed to a settlement in their official capacities at a public meeting.   We further conclude that the settlement agreement was binding on all parties, including the Trustees in their individual capacities.   Attorney fees were also appropriately awarded, pursuant to the settlement agreement.   Accordingly, the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

{¶ 4}    The Kilroys are owners of real property located in Jackson Township, Montgomery County, Ohio.   The action before us arose from a prior mandamus action in which the Kilroys, their neighbors, the Johnsons, and the Trustees entered into a stipulation and settlement agreement in lieu of a writ of mandamus.   The agreement provided, among other

things, that the Johnsons would clear the fence line between the Kilroy and Johnson properties of all brush, briars, thistles, vines, and other noxious weeds, by cutting or otherwise physically removing the weeds. If the Johnsons failed to do this, the agreement also provided that the Kilroys would have the right to petition the Trustees for relief pursuant to R.C. 971.34, and that the Trustees would agree to promptly grant the relief authorized by the statute. The parties signed the settlement agreement in November 2005.

{¶ 5} Subsequently, in June 2007, the Kilroys filed the present civil action against the Johnsons and the Trustees, both individually and in their official capacities. The complaint alleged that the Johnsons had failed to clear the partition fence line, and that the Trustees had also refused to cure the Johnsons's default. Therefore, according to the complaint, the Trustees had breached the settlement agreement.

{¶ 6} The complaint also contained claims that the Trustees, as individuals, had acted fraudulently in inducing the Kilroys to enter into the settlement agreement. As a result, the Kilroys requested punitive damages against the Trustees in their individual capacities. Accordingly, the Kilroys asked the trial court to order the Trustees to perform their obligations under the settlement agreement and to award attorney fees and costs. The Kilroys also asked the court to award compensatory and punitive damages, and to include reasonable attorney fees.

{¶ 7} In December 2008, an agreed entry of partial dismissal of claims against the Johnsons was filed. A second amended complaint was then filed in January 2009, eliminating the claims against the Johnsons, and retaining the claims against the Trustees in their individual and official capacities. The Second Amended Complaint contained the following claims: (1) a breach of contract claim against Jackson Township; (2) a declaratory judgment claim against

Jackson Township; (3) a failure to perform special duty claim against Jackson Township; (4) an intentional interference with contract claim against the Trustees, individually; and (5) a civil conspiracy claim against the Trustees, individually. As before, the complaint requested compensatory and punitive damages, and reasonable attorney fees.

{¶ 8} At all times relevant, an Assistant Prosecuting Attorney for Montgomery County represented the Trustees in both their individual and official capacities. *See, e.g.*, Answer of Jackson Township Trustees to Plaintiffs' Second Amended Complaint, Doc. #57.

{¶ 9} In January 2010, the parties participated in mediation. Settlement was not immediately successful, but the parties then informed the trial court on January 15, 2010, that the case had been settled. Subsequently, however, the Kilroys filed a motion to enforce the January 2010 settlement agreement, based on the fact that the Trustees had refused to sign an apology letter that had been agreed upon. The motion was supported by the affidavit of Christopher Conard, an attorney representing the Kilroys. Conard and his clients had attended the mediation hearing, along with the Trustees and their attorney, Doug Trout. According to Conard:

> One of the material terms of the settlement offer was that the Trustees sign an apology letter to the Kilroys that would be drafted by my office. I presented a copy of the apology letter to the Trustees and Mr. Trout [their attorney] at the mediation. The language of the apology letter was approved at the mediation and counsel for all parties left the mediation with only the settlement amount to be paid to the Kilroys and the payment terms open for continued discussions. Affidavit of Christopher Conard, ¶ 5, attached as Exhibit A to Plaintiff's Motion to Enforce Settlement Agreement, Doc. #69.

**{¶ 10}** The apology letter contained the names of the Trustees and signature lines for their signature. The letter also stated, in pertinent part, that:

Dear Mike and Vickie:

We sincerely apologize for all of the pain and inconvenience we have caused you over the years by failing to perform our duty to clear the fence line between the property located at 12360 Hemple Road and 12332 Hemple Road.

Again, please accept our apology. Exhibit B attached to Plaintiff's Motion to Enforce Settlement Agreement, Doc. #69.

**{¶ 11}** Conard's co-counsel, David Pierce, subsequently sent an e-mail to Doug Trout, dated January 14, 2010. The e-mail outlined the following settlement terms, subject to a formal settlement agreement:

1) [Trout's clients] will pay the Kilroys $15,000 with 5K upon execution of the agreement; 5K by January 15, 2011; and 5K with [sic] January 15, 2012. If [Trout's clients] don't make the future payments on time, they will be responsible for all future attorney fees, expenses, and costs of collection;

2) [Trout's clients] will execute the apology letter we previously sent to you at the time the agreement is signed and deliver it to [the Kilroys];

3) [The Kilroys] will execute a settlement agreement and mutual release for all actions by any party to date. The release will not, however, have any confidentiality provision in it or other restrictions on our respective clients not set forth herein;

4) An exhibit to the release will be a proposed resolution for approval by

the township and   [Trout's clients] will agree to use their best efforts to have the agreement approved;

5)   Upon [Trout's] confirming e-mail, [the Kilroys] will advise the court that [the parties] have an agreement and that the trial date is off.   If for any reason, this settlement is not fully executed or approved by the Township, [the parties] will be able to pursue their original claims if they elect to do so.   Exhibit C attached to Plaintiff's Motion to Enforce Settlement Agreement, Doc. #69.

{¶ 12}   After receiving David Pierce's e-mail, Trout responded with the following e-mail, message, dated January 14, 2010:

Dear Dave:

I have reviewed the terms of the settlement as outlined by you in the attached message.   We have a settlement based on the terms described below [in Pierce's original e-mail, which appears below Trout's e-mail].   Once a formal settlement agreement is drafted and submitted to me for approval and execution, I will have my clients pass a resolution and take all steps to effectuate the agreement.

Regards,

Douglas M. Trout.   *Id.*

{¶ 13}   On January 20, 2010, Conard sent Trout the final copy of the formal settlement agreement, which included the apology letter that had previously been sent to Trout.   See Ex. E attached to Plaintiff's Motion to Enforce Settlement Agreement, Doc. #69.   However, Trout informed Conard shortly thereafter that the Trustees would not sign the apology letter.

{¶ 14}   On May 10, 2010, the Trustees filed a memorandum in response to the Motion to

Enforce Settlement. The Trustees admitted that they had agreed to a financial settlement and apology letter as referenced in Conard's affidavit and the January 14, 2010 e-mail exchanges between the attorneys. However, the Trustees contended that the agreement was subject to the approval by the Trustees at their next regular session on January 21, 2010. The Trustees further represented that the language in the apology letter was not acceptable to the Trustees at their meeting of January 21, 2010.

{¶ 15} In addition, the Trustees noted that they had proposed several drafts of an apology letter and had signed one such letter on January 21, 2010. The apparent argument of the Trustees was that the apology letter proposed by the Kilroys (and agreed to originally) implied that the Trustees had failed in their legal duty. The letters that the Trustees proposed indicated, for example, that the Trustees would apologize for not having cleared the property line to the satisfaction of the Kilroys. See, Exhibit 1 attached to the Trustees' Motion Contra to Motion to Enforce Settlement Agreement, Doc. #71. This particular apology letter had been signed by the Trustees.

{¶ 16} The Trustees also argued that they did not intend to be bound by an agreement until formalized in a written document signed by both sides. They further noted that they could not execute or approve any agreement without voting and passing a resolution approving an agreement in an open meeting. The Trustees, therefore, contended that there was no agreement because they had not executed the document.

{¶ 17} On June 10, 2010, the parties filed joint stipulations regarding the motion to enforce the settlement. These stipulations reflect the facts referenced above with respect to the terms of the settlement and the Trustees' refusal to sign the agreed-upon letter of apology.

**{¶ 18}** In August 2010, the trial court issued a decision overruling the motion to enforce the settlement, and declaring that a settlement had been reached.

**{¶ 19}** In its decision, the trial court noted the Trustees' position that the agreement was subject to approval by the Trustees at their next regular session on January 21, 2010, and that such approval had not been given. The trial court noted that the Trustees were required by R.C. 121.22(H) to deliberate and adopt the proposed settlement terms in an open meeting of the Board of Trustees. Because the Board of Trustees did not adopt the language of the apology letter pursuant to R.C. 121.22(H), the trial court reasoned that the Trustee Defendants were not bound to accept it.

**{¶ 20}** The trial court went on to note that a settlement had, indeed, been reached with respect to the payment of money and an apology letter. The court ordered the Trustees to pay the Kilroys $15,000 in three installments. In addition, the court held that Jackson Township as an entity, if not through its trustees, would be deemed to have apologized regarding the clearing of the fence line between the properties.

**{¶ 21}** In September 2010, the Kilroys appealed from the trial court's decision. We dismissed the appeal in July 2011 for lack of a final appealable order. *Kilroy v. Peters*, 2d Dist. Montgomery No. 24268, 2011-Ohio-3415, ¶ 16.

**{¶ 22}** In the meantime, the Kilroys' attorneys had sent a public records request to the Jackson Township Board of Trustees, seeking copies of the meeting minutes from the Trustees' meeting that was held on January 21, 2010; copies of Resolution #07-2010; and copies of other meeting minutes. After the case was remanded from the court of appeals, the Kilroys submitted supplementary evidence in support of their motion to enforce the settlement agreement.

**{¶ 23}** The supplementary evidence indicates that the public records request was sent to the Board of Trustees in November 2010. Several times thereafter, the Kilroys' attorneys made calls to determine the status of the request. Eventually, on March 22, 2011, the Board responded, and enclosed copies of the resolution and meeting minutes of the January 21, 2010 meeting, as well as the meeting minutes for the next scheduled meeting, which was on February 16, 2010.

**{¶ 24}** Resolution #07-2010 was adopted at the January 21, 2010 meeting and is signed by the Trustees. This resolution states as follows:

> Whereas the Jackson Township Trustees have been sued in their individual and official capacities by Michael and Vickie Kilroy (Case Number 2007 CV 5170) arising out of disputes involving fence line conflicts under Chapter 971 of the Ohio Revised Code; and

> Whereas the Jackson Township Trustees have a fiscal responsibility to the citizens of Jackson Township; and

> Whereas the Jackson Township Trustees have viewed the fence line and attempted to resolve the dispute; and

> Whereas the Jackson Township Trustees have been advised to settle all remaining disputes by legal counsel in the best interest of the township;

> Whereas the Jackson Township Trustees have decided to settle the matter to avoid prolonged costly litigation;

> Whereas the terms of the settlement require payment of $15,000 over a period of three years and a letter of apology to the Plaintiffs;

> Whereas the Jackson Township Trustees have been advised of [sic]

counsel to issue a letter of apology in this case;

Therefore Be it Resolved, the Jackson Township Board of Trustees authorize the settlement of this case upon the terms listed on the attached Settlement Agreement and Mutual Release. Exhibit 2, p. 2, attached to the Affidavit of Sasha Alexa M. VanDegrift, which is attached as Exhibit A to the February 3, 2012 Submission of Supplementary Evidence in Support of Plaintiffs' Michael Kilroy et al's Motion to Enforce the Settlement, Doc. #4.[1]

{¶ 25} The minutes of the January 21, 2010 meeting state that:

For the record, Doug Trout stated that at this time there is no agreement on the language of the settlement. Trout stated that the trustees agreed to sign our version of the settlement for further negotiations. If there is no agreement the resolution will be rescended [sic] at the next Jackson Township Meeting. Exhibit 2, p. 6.

{¶ 26} The Trustees did not rescind the resolution at the next township trustees' meeting, which was held on February 16, 2010. *Id*. at pp. 3-5. They also did not rescind the resolution at any meeting thereafter, until the meeting that was held a week before they responded to the public records request, i.e., on March 14, 2011. *Id.* at p. 1.

{¶ 27} In August 2012, the trial court granted the Kilroys' motion to enforce the settlement agreement. The court noted that the motion to enforce the settlement agreement had been overruled previously based on the evidence in the record at that time. The court also

---

[1] The clerk of courts chose to use new docket numbers after the case was remanded. Thus, the Submission of Supplementary Evidence was docketed as Doc. #4 in the case after remand.

observed that its prior decision failed to distinguish between the Trustees' obligations in their individual as opposed to official capacities. In addition, the court noted that the prior decision failed to contain a Civ.R.54(B) certification.

{¶ 28}    With respect to the settlement, the trial court observed that the Trustees had adopted it at a public meeting, unbeknownst to the Kilroys. The court commented that although the Trustees did not attach a copy of the settlement agreement to the resolution, the Trustees appeared to be referring to the settlement agreement that counsel had exchanged. Under that agreement, the Trustees were required to pay the Kilroys $15,000 over a period of three years and sign the apology letter. Further, the settlement agreement provided for liquidated damages in the event that the Trustees failed to provide payment or to sign the apology letter, including all costs and attorney fees reasonably incurred to enforce the agreement's terms.

{¶ 29}    The trial court then held that the Trustees had agreed in their official capacities to pay the $15,000 and to sign the apology letter because both were approved at a public meeting. In addition, the Trustees failed to rescind the resolution as they indicated they would do if there were no agreement. Accordingly, the trial court granted the motion with respect to the Trustees in their official capacities.

{¶ 30}    After making these remarks, the trial court went on to consider the issue of individual liability. In this regard, the court concluded that the Trustees had agreed to the settlement in their individual capacities, because their counsel, who was representing the Trustees in both their individual and official capacities, did not limit the settlement to the Trustees' official capacities. In this regard, the court further observed that the parties had notified the court that the entire case was settled, and that the drafts of the settlement agreement purported to bind the

Trustees in both their individual and official capacities.

{¶ 31}    Finally, the court held that the Kilroys were entitled to attorney fees, to be determined after a hearing.   Subsequently, after holding a hearing, the court awarded the Kilroys $37,558.15 in attorney fees and expert fees of $3,888.

{¶ 32}    The Trustees appeal from the Amended Decision, Order and Entry granting the motion to enforce the judgment and awarding attorney fees and costs.


II.   Did the Trustees Agree to the Settlement

in Their Official Capacity at a Public Meeting?

{¶ 33}    The Trustees' First Assignment of Error states as follows:

The Trial Court Erred by Finding that the Trustees Agreed to the Settlement

in Their Official Capacity at a Public Meeting.

{¶ 34}    Under this assignment of error, the Trustees contend that they cannot be bound by a settlement until they pass a resolution in an open meeting.   Although they admit to having passed and signed such a resolution, they rely on the meeting minutes, which state that if the Trustees failed to reach an agreement, they would rescind the resolution at the next public meeting.   The Trustees concede that they failed to rescind the resolution at that meeting.   They argue that the resolution was rescinded on March 14, 2011, more than one year later, and that they are not bound by the original resolution.

{¶ 35}    In response, the Kilroys argue that the Trustees are bound by Resolution #07-2010, which they adopted at an open meeting, and that the Trustees could not validly thereafter rescind the agreement.

**{¶ 36}** "[A] settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and * * * such agreements are valid and enforceable by either party." (Citations omitted.) *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). The law highly favors settlement agreements. *Id.*

**{¶ 37}** "Settlement agreements are essentially a contract and are governed by the law of contracts. To establish a breach of a settlement agreement, the party alleging the breach must prove: 1) existence of the Settlement Agreement, 2) performance by the plaintiff, 3) breach by the defendant, 4) resulting damages or loss to the plaintiff." (Citation omitted.) *Raymond J. Schaefer, Inc. v. Pytlik*, 6th Dist. Ottawa No. OT-09-026, 2010-Ohio-4714, ¶ 24.

**{¶ 38}** Our "standard of review is whether or not the trial court erred in denying the motion to enforce settlement agreement." *Ohio Title Corp. v. Pingue*, 10th Dist. Franklin No. 10AP-1010, 2012-Ohio-1370, ¶ 27, citing *Continental W. Condominium Unit* at 502. This involves determining " 'whether the trial court's order is based on an erroneous standard or a misconstruction of the law.' " *Id.*, quoting *Continental W. Condominium Unit* at 502.

**{¶ 39}** With respect to the duties of public entities like townships, R.C. 121.22(A) requires "public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law." R.C. 121.22(H) further states that "[a] resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body."

**{¶ 40}** The Trustees complied with these requirements when they enacted Resolution #07-2010 in an open meeting. Thus, the resolution settling the case was valid. The issue is the

effect of the meeting minutes and the later rescission of the resolution.

**{¶ 41}** In *State ex rel. Edwards Land Co., Ltd. v. Delaware Cty. Bd. of Elections*, 129 Ohio St.3d 580, 2011-Ohio-4397, 954 N.E.2d 1193, the Supreme Court of Ohio concluded that an application for rezoning had been approved when the board of township trustees voted to approve the application as amended, not on the later date when the minutes of the meeting were approved. *Id.* at ¶ 29-34. In this regard, the Supreme Court of Ohio stressed that:

> [T]here is no language in R.C. 121.22(C) that says that a legislative enactment does not become official until minutes are approved. "Minutes serve as records of actions, not as actions themselves." *Id.* at ¶ 34, quoting *Davidson v. Hanging Rock*, 97 Ohio App.3d 723, 733, 647 N.E.2d 527 (4th Dist.1994).

**{¶ 42}** At issue in *Edwards Land Co.* was R.C. 519.12(H), which specified "that a township zoning amendment becomes effective 30 days after it is adopted by the board of township trustees unless a referendum petition is filed within the 30 days after it is adopted." *Id.* at ¶ 22. The Supreme Court of Ohio rejected the township's argument about when adoption of the zoning amendment had occurred. Among other things, the court stated that:

> Finally, a contrary ruling would engender unreasonable results. Leaving the citizens of Liberty Township unable to vote on an important community issue is unfortunate, but the board of elections' advocated construction of R.C. 519.12(H) – that the zoning amendment in this case was not adopted until written minutes of its adoption were adopted – is untenable. This new definition of the word "adoption" would elevate hearing minutes to the status of legislation and invite confusion in any number of future cases, suggesting to Ohioans that no governing body—county

commissioners, city council, or school board—or any other public board, local or state, performs any official act until a written record of the act is prepared and approved. *Id*. at ¶ 36.

{¶ 43} Under this theory, the remarks in the meeting minutes do not alter Resolution #07-2010. Although the minutes state the Trustees' view about the resolution, these statements were not included in the resolution and cannot alter the effect of the resolution that was enacted. Resolution #07-2010, as passed by the Trustees on January 21, 2010, fails to contain any language conditioning the settlement. Instead, the Trustees agreed to settle the pending litigation on the terms proposed in the settlement agreement, including the letter of apology that had already been agreed to by the Trustees and their attorney.

{¶ 44} The Supreme Court of Ohio has stressed that "[w]ell chronicled in Ohio law, and in that of many other jurisdictions, is the rule that parol evidence is not admissible to impeach a legislative journal." (Citations and footnote omitted.) *Billington v. Cotner,* 25 Ohio St.2d 140, 150, 267 N.E.2d 410 (1971), *limited on other grounds* in *State ex rel. Bedford v. Cuyahoga Cty. Bd. of Elections* , 62 Ohio St.3d 17, 22, 577 N.E.2d 645 (1991).

{¶ 45} In *Billington*, the Supreme Court of Ohio concluded that parol evidence could not be submitted to supply missing terms in a municipal resolution. *Id.* Thus, the court held that the municipality was bound by the ordinance as written, and was not allowed to present parol evidence showing that the ordinance had been amended on the floor before passage to include a missing date. *Id.* at 140 and 150. *Accord Bd of Twp. Trustees v. Spring Creek Gravel Co., Inc.*, 45 Ohio App.2d 288, 291-292, 344 N.E.2d 156 (2d Dist.1975) (refusing to allow parol evidence to show that a board of township trustees had enacted an amended zoning resolution

when the board's records did not indicate that the resolution had been enacted). The pertinent point is that a legislative body speaks through its official actions, such as resolutions, ordinances, and so forth. As was noted, statements made in meeting minutes are not official actions. *State ex rel. Edwards Land Co., Ltd.,* 129 Ohio St.3d 580, 2011-Ohio-4397, 954 N.E.2d 1193, at ¶ 34.

{¶ 46} Furthermore, even if we could consider the intention expressed in the meeting minutes, the Trustees' expressed intent was that they would rescind Resolution #07-2010 at their next meeting if no agreement had been reached. However, the Trustees did not rescind the resolution at their next meeting, which took place on February 16, 2010. By failing to rescind the resolution, the Trustees indicated their agreement to the settlement.

{¶ 47} On appeal, the Trustees argue that they did, in fact, rescind the resolution more than a year later, in March 2011. However, the issue is not whether the Trustees could technically pass new legislation regarding a resolution previously enacted; the issue is the effect of the Trustees' actions.

{¶ 48} Although the Trustees had the legislative ability to pass another resolution on the subject, their attempt to rescind a valid agreement was invalid and was itself a breach of the existing settlement agreement. See *State ex rel. Jewett v. Sayre,* 91 Ohio St. 85, 97, 109 N.E. 636, 640 (1914) (noting that once a county enters into a settlement agreement with a contractor, the agreement "is just as binding upon the county as any other lawful contract the board of county commissioners could make, and that board, without the consent of the other contracting party, could not rescind its action and annul this contract of settlement.")

{¶ 49} Based on the preceding discussion, the Trustees entered into a valid and binding settlement agreement, and breached the agreement by failing to pay the Kilroys and to issue the

apology letter.

**{¶ 50}**    Accordingly, the First Assignment of Error is overruled.


### III.   Did the Trustees Agree to the

### Settlement in Their Individual Capacities?

**{¶ 51}**    The Trustees' Second Assignment of Error is as follows:

The Trial Court Erred by Finding that the Trustees Agreed to the Settlement

in Their Individual Capacities.

**{¶ 52}**    Under this assignment of error, the Trustees concede that the settlement was

intended to cover their liability in both their personal and official capacities.   The Trustees

contend, however, that it would be unjust to conclude that they failed to agree to the settlement in

their official capacities, while also concluding that they agreed in their individual capacities.

**{¶ 53}**    We have made no such conclusion.   To the contrary, we have concluded that the

Trustees officially adopted and signed a resolution agreeing to the settlement.   The settlement

covered all parties to the case and was binding.   As a result, we do not need to further address the

individual agreement of the Trustees.

**{¶ 54}**    The Second Assignment of Error is overruled, for the reasons stated.


### IV.   Are the Kilroys Entitled to Attorney Fees?

**{¶ 55}**    The Trustees' Third Assignment of Error states that:

The Trial Court Erred in Determining that the Kilroys are entitled to

Attorney Fees.

**{¶ 56}** Under this assignment of error, the Trustees contend that they are not liable for attorney fees if, in fact, they failed to reach a settlement in either their individual or official capacities.   They do not challenge the amount of fees awarded.

**{¶ 57}** This assignment of error is also overruled, in view of our conclusion that the Trustees reached a settlement agreement in their official and individual capacities.   Accordingly, the Third Assignment of Error is overruled.


## V.   Conclusion

**{¶ 58}** All of the Trustees' assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Todd M. Ahearn
Christopher R. Conard
David P. Pierce
Sasha Alexa M. VanDeGrift
Hon. Dennis J. Adkins